## REDUS v. THE PEOPLE.

1. An indictment charging that defendant unlawfully, feloniously, wilfully, purposely, and of his malice aforethought, did kill and murder the deceased, is sufficient to warrant a verdict finding that the homicide was committed with deliberation and premeditation — a finding necessary to authorize the death penalty.
2. When one is tried as on a charge of murder in the first degree, but the jury find a verdict of murder in the second degree, the error is not cured if the indictment fails to describe the higher grade of the crime.
3. An instruction charging the jury that testimony admitted, tending to show that deceased, when intoxicated, was a quarrelsome and dangerous man, was not material in determining the intent with which defendant acted, unless at the time of the homicide he had knowledge of deceased's character in this respect, is not error.

*Error to District Court, Montrose County*

REDUS was tried in the court below upon an indictment charging murder. He was convicted of murder in the second degree, and sentenced to fourteen years in the penitentiary. To reverse this judgment the present writ of error was sued out.

The statutes of 1870 and 1883, referred to in the opinion, read as follows (act of 1870):

"Section 1. That section 20 of said chapter 22 of the Revised Statutes of Colorado territory shall be hereafter construed so that the death penalty for the crime of murder shall not be ordered to be inflicted by the courts of the territory unless the jury trying the case shall, in their verdict of guilty, also indicate that the killing was deliberate or premediated, or was done in the perpetration or attempt to perpetrate some felony.

"Section 2. Any person hereafter found guilty of the crime of murder by the verdict of a jury, without any indication in such verdict whether the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony, shall be sentenced to confinement in the penitentiary for and during such person's natural life, which confinement may be with or without hard labor, or both, at the discretion of the court."

"Gen. St. 1883, § 709.   *   *   *   All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary, or perpetrated from a deliberate and premeditated design, unlawfully and maliciously to effect the death of any human being other than him who is killed, or perpetrated by any act greatly dangerous to the lives of others, and indicating a depraved mind regardless of human life, shall be deemed murder

of the first degree, and all other kinds of murder shall be deemed murder of the second degree. The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder in the first or second degree. Every person convicted of murder of the first degree shall suffer death, and every person convicted of murder of the second degree shall suffer imprisonment in the penitentiary for a term not less than ten years, and which may extend to life. If any person indicted for murder shall plead guilty to the indictment, the court shall thereupon impanel a jury, as in other cases, to whom shall be submitted, as the sole issue in the case, the question whether the killing was murder in the first or second degree. The jury in every such case shall find the degree thereof, and the court shall thereupon give sentence accordingly."

All other matters material to the decision are sufficiently stated in the opinion.

Messrs. STIRMAN and CARPENTER, for plaintiff in error.

ALVIN MARSH, Attorney-General, for defendant in error.

HELM, J. The indictment in this case charges that defendant unlawfully, feloniously, wilfully, purposely, and of his malice aforethought, did kill and murder the deceased. Under this indictment defendant was tried upon the theory that he might be convicted of murder in the first degree. Such proceeding, his counsel assert, was a fatal error. They claim that the words used are wholly insufficient to warrant the jury in finding that the killing was done with *deliberation* and *premeditation*,— a finding necessary in this case to such a conviction as would authorize the death penalty. They contend that, to sustain such a finding, the indictment itself must, under section 709 of the General Statutes, adopted in 1883, aver that the killing was done with deliberation and premedi-

tation, using these or equivelant words; and that, failing so to do, its averments are not broad enough to charge the offense for which defendant was put upon trial.

It cannot be said that, since defendant was only convicted of murder in the second degree, he could not have been prejudiced through the error committed by putting him upon trial for his life, if error there was in so doing.

Under statutes substantially similar to the one upon which counsel rely, two views relating to the subject in hand have been taken. Mr. Bishop, in a lengthy and able argument, affirms the proposition above stated and urged upon us. Supporting him are the decisions of courts of last resort in Iowa, Ohio and Kansas, together with strong dissenting opinions in Wisconsin and other states. 2 Bish. Crim. Proc. (2d ed.) §§ 562–609, and note. On the other hand, Mr. Wharton declares that, "according to the great weight of authority, a common-law indictment for murder is sufficient to support, under the statutes, murder in either first or second degree." 2 Whart. Crim. Law, § 1115, and cases cited. It is scarcely necessary to state that common-law indictments do not, as a rule, use the words "deliberation and premeditation," and that the indictment before us sufficiently charges the offense at common law.

We deem it unnecessary to discuss at length the relative merits of the two positions thus taken in this legal controversy, because —

*First*, they relate to what is hardly, in this state, an open question. In the year 1870 an amendment to the Criminal Code was adopted, the first and second sections of which provided that when, upon a trial for murder, the jury convicted, and stated in their verdict that the killing was deliberate or premeditated, or was done in the perpetration or attempt to perpetrate some felony, the punishment should be death; but if the jury returned a verdict of guilty, without declaring that the killing was deliberate or premeditated, or was done in the perpetra-

tion or attempt to perpetrate some felony, the penalty to be imposed by the court was imprisonment for life. Sess. Laws 1870, p. 70; Gen. Laws 1877, §§ 868, 869. So far as the question now presented is concerned, there is no difference in principle between the act of 1870 and that of 1883, which more closely resembles in form the "parent statute" of 1749 in Pennsylvania. Both acts distinguish between grades of punishment, but the latter uses, with reference to such distinction, the terms "first degree" and "second degree," not found in the former. It also ameliorates the penalty provided by the former, where the conviction is of murder in the second degree, by giving the court discretionary power to impose a sentence ranging downward from imprisonment for life to ten years in the penitentiary. The remaining changes effected by the act of 1883, including the substitution of the conjunction "and" for the conjunction "or" between the words "deliberate" and "premeditated," are of no significance in the present inquiry. If an indictment, in a case like the one at bar, framed under the act of 1870, which did not charge that the offense was committed with deliberation or premeditation, was sufficient to put the accused upon trial for his life, such an indictment is most certainly sufficient, under the present statute, to sustain a conviction of murder in the first degree.

In *Hill v. People*, 1 Colo. 436, the identical question now presented was submitted and passed upon by the court under the act of 1870. The indictment in that case, like the indictment in this, failed to aver that the killing was done with deliberation or premeditation; yet the court held it sufficient, although the accused was found guilty of premeditated murder, and sentenced to death. The learned judge who wrote the opinion rested his argument mainly upon the proposition that the expression "malice aforethought" is co-extensive in meaning with the words "deliberation" and "premeditation." He says, in discussing this expression, that its primary and popu-

lar significance is "rather more comprehensive than 'deliberation' and 'premeditation,' inasmuch as the latter words do not necessarily imply wickedness of purpose or evil design.    Said Lord Coke (3 Inst. 51): 'Malice prepensed is when one compasseth to kill, wound or beat another, and doth it *sedato animo.*    This is said in law to be malice aforethought, prepensed, *malitia precogitata.*'    The [technical legal] meaning of these words has been greatly *amplified* since the days of Lord Coke. *   *   *    Before the statute of 1870 it was never doubted that a formed design and deliberate purpose to kill was provable under the averment of malice aforethought, and there is nothing in the statute to change the rule on this subject."    But, as we have already intimated, if there is nothing in the statute of 1870 "to change the rule on this subject," the rule remains unchanged under the statute of 1883.

No doctrine of the criminal law is more axiomatic than that the indictment must fully and fairly charge the offense for which the accused is put upon trial; and, if the language of the Redus indictment does not comply with this essential requirement, no reasoning, however ingenious, will avoid the force of Mr. Bishop's argument, or the application of his conclusion.    But we believe that the language of this indictment is sufficient.    The expression "feloniously, wilfully, and of his malice aforethought, did kill and murder," states the *quo animo* of the slayer, as well as the fact of the homicide.    It charges, not only the specific intent of the slayer to take life, but also (accepting Lord Coke's definition, above given) that the intent, together with the malevolence, was prepense,—aforethought.    This malevolent design to kill may have been formed at the instant of the homicide, or it may have existed in the mind of the slayer for a considerable period before it was put into execution.

*Secondly.*  Neither of the acts under consideration creates or recognizes a *new* offense.  They both assume that

the offense already exists, and merely provide different grades of punishment, according to the circumstances or the condition of mind under which the crime is committed. The crime, as defined and understood at common law, has always existed in Colorado. The territorial legislature of 1861 expressly affirmed its existence by adopting a statute, in which there has since been no substantial alteration, giving the common-law definition. Gen. St. § 707. Moreover, the legislature, in 1879, as if to anticipate the very question we are now discussing and put it at rest, enacted a section which contains the following declaration: "It shall be sufficient, in every indictment for murder, to charge that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." Gen. St. § 926. In view of the conclusion above expressed, viz., that the phrase "feloniously, wilfully, and of his malice aforethought," fairly includes the idea of deliberation and premeditation, this provision cannot be assailed upon constitutional grounds. It is still in force, and we must hold that an indictment containing the language used therein by the legislature will sustain, upon proper evidence, a conviction of murder in the first degree.

Passing from the indictment, a further objection is urged. It relates to the sixth instruction given by the court below. This part of the charge informed the jury that the testimony admitted, tending to show that deceased, when intoxicated, was a quarrelsome and dangerous man, was not material in determining the intent with which defendant acted, unless it appeared that he had, at the time of the homicide, knowledge of the deceased's character in this respect. It is contended that evidence of this kind is admissible, and is to be considered by the jury, even if the defendant possessed no such information or knowledge. We shall enter into no lengthy discussion of this subject. There are isolated expressions, both in decisions and text-books, which

seem, at first glance, to .warrant the position of counsel. Upon careful examination, however, it is found that such evidence is only admissible — *First,* when the accused is attacked, and claims to have been acting in self-defense; and, *secondly,* when his *belief* of actual danger at the time of the homicide is the specific point of inquiry. But it is submitted that, without some knowledge thereof, deceased's general character as a quarrelsome and dangerous man could not affect defendant's belief as to his own impending danger.

The true doctrine is thus stated by Mr. Wharton: "Suppose the defendant should simply ask to prove that the deceased was ferocious and desperate as a ground of justification, the answer would be: 'No man has a right to take the law in his own hands, and act as a sort of vigilance committee to clear society of dangerous persons.' But, on the other hand, suppose the offer to be, not justification, but excuse on the ground of self-defense, or mitigation of the grade of guilt. If, in such case, it be proved that the defendant was actually attacked, and if evidence should be then tendered that the deceased was a man of ferocious temper or malignant passions, and of overpowering strength, *and if it be, in addition, offered to be proved that the defendant had notice of these characteristics of the deceased,* then the better opinion is that the evidence is admissible." 1 Whart. Crim. Law (7th ed.), § 641; *State v. Turpin,* 77 N. C. 473; *State v. Graham,* 61 Iowa, 608; *State v. Riddle,* 20 Kan. 711.

Nor does the foregoing view conflict with the position announced by this court in *Davidson v. People,* 4 Colo. 145. By carefully reading the whole opinion, counsel will discover that they have misunderstood its purport. They will see that the prisoner's knowledge of the deceased's quarrelsome and dangerous character is specifically mentioned as an element bearing upon the consideration of evidence relating to such character.

The remaining objection presented is that the verdict

was contrary to the evidence. The record shows a number of circumstances somewhat palliating the offense. Deceased was a powerful man. He was evidently, when in liquor, quarrelsome. He began the affray by using abusive language, and followed it up with blows from the open hand. But he was intoxicated, while defendant was sober. Defendant could have left the room, as he was advised to do, after deceased began his insulting remarks and his assaults, and thus have avoided further trouble. That the jury gave defendant the benefit of the extenuating circumstances is shown by the fact that they not only found him guilty of murder in the second degree, but also, in their verdict, recommended him to the mercy of the court. Upon a careful consideration of the evidence we cannot say that it did not warrant the verdict returned.

The judgment of the court below will be affirmed.

*Affirmed.*