[No. 4801.]

ANDREWS ET AL. V. THE PEOPLE.

| 33 | 193 |
| 36 | 89 |

[No. 4802.]

ARNOLD V. THE PEOPLE.

1.   Informations and Indictments—Murder—Attempt to Rob.

To sustain a conviction for murder in the first degree, committed in an attempt to perpetrate robbery, it is not necessary that the information should allege that the murder was committed in an attempt to perpetrate robbery.

2.   Constitutional Law—Legislative Procedure—Evidence.

The record of a notice of protest against a bill, by the speaker of the house, which it does not appear was ever filed or acted upon, or of a motion to amend, upon which the journal is silent as to any action, and which it does not appear were ever submitted, are insufficient from which to deduce the conclusion that the constitutional requirements with respect to the printing of amendments were not observed.

3.   Constitutional Law—Passage of Bills—Evidence—Legislative Journals.

In determining whether the constitutional requirements with respect to the passage of bills have been complied with, resort may be had to the legislative journals, and if it affirmatively appears therefrom, either expressly or by necessary implication, that the provisions of the constitution were not observed, then the bill is invalid; but if the journals are silent on the question, it must be presumed that the constitutional requirements were in all respects complied with.

4.   Same—Oral Testimony.

The recitals of legislative journals or the presumptions which attach from their silence, cannot be contradicted by verbal statements.

5.   Same—Reconsideration.

The constitutional requirement that the vote on the passage of the bill must be taken by ayes and nays, does not apply to a motion to reconsider action taken on the passage of a bill.

6.   Murder—Malice—Attempt to Rob—Instructions.

The element of malice does not enter into the crime of murder committed in an attempt to commit robbery. Where the proof was undisputed that the homicide was committed in an attempt to perpetrate robbery which the defendants conspired to commit it was not necessary to prove any facts from which malice, deliberation or premeditation might be inferred, and an erroneous instruction upon the subject of malice was error without prejudice.

13

**7. Murder—Attempt to Rob—Conspiracy—Intent.**

Where two or more persons conspired to commit a robbery and went to the place where the robbery was to have been committed, armed with deadly weapons, and in an attempt to perpetrate the robbery one of them committed murder, all are guilty of murder of the first degree, whether or not they intended to commit murder.

**8. Evidence—Confessions.**

The admission in evidence of a confession of defendant obtained under circumstances which would preclude its admission, or of the confession of a codefendant in defendant's presence when defendant was compelled to remain silent, would not be reversible error where defendant subsequently made a voluntary confession, and testified at the preliminary examination, both of which substantially agreed with the objectionable confessions.

**9. Practice in Criminal Cases—Change of Venue—Discretion—Appellate Practice.**

Whether or not a change of venue in a criminal case should be granted rests in the sound discretion of the trial court, and its action will not be disturbed unless it appears that such discretion has been abused to the prejudice of the applicant.

*Error to District Court of the City and County of Denver:*

*Hon. P. L. Palmer, Judge.*

Plaintiffs in error in each of the above entitled causes were convicted of murder in the first degree, and sentenced to suffer the death penalty. They were originally informed against jointly, but plaintiff in error Arnold was tried separately. The questions presented in each case being in many respects identical, they will be disposed of in one opinion. The main questions raised are:

(1) The sufficiency of the information under the testimony to justify a verdict of murder in the first degree;

(2) The validity of the capital punishment act;

(3) Alleged errors in giving and refusing instructions;

(4)   The admissibility of testimony; and
(5)   Overruling motion of defendant Peters for change of venue.

The necessary data for an understanding of the questions considered and decided appear in the opinion.

Mr. JAMES B. BELFORD, for plaintiff in error Peters.

Mr. WILLIS V. ELLIOTT, for plaintiff in error Andrews.

Mr. J. M. ESSINGTON, for plaintiff in error Arnold.

Mr. N. C. MILLER, attorney general, Mr. H. J. HERSEY, Mr. H. A. LINDSLEY and Mr. F. W. SANBORN, for the people.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

1.   The information charged that the defendants (after stating the date and venue) "did feloniously, willfully and of their malice aforethought, kill and murder one Amanda Youngblood, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Colorado."   At the trial it developed from the testimony that the defendants entered the house of the husband of the deceased with intent to commit a robbery, and that the homicide was committed in the attempted perpetration of that crime. Mrs. Youngblood was killed by a shot fired by either Andrews or Arnold.   Counsel for the defendants now urge that the information was insufficient under this testimony to justify a conviction of murder in the first degree, for the reason, as they claim, that where two or more are jointly indicted for the crime of murder which was committed in the perpetration, or attempt to perpetrate, a felony, and the killing

was done by one, but in the absence of proof of a joint purpose to kill, it is necessary for the information to allege or charge that the homicide was committed in the perpetration, or attempt to perpetrate, one of the felonies named in the statute on the subject of murder. In other words, they contend that because the statute provides that the commission of murder in the perpetration, or attempt to commit, the crime of robbery constitutes murder in the first degree, which may be punished by death if the jury so determine, it was necessary to allege that the homicide was committed by the accused in the perpetration or attempt to perpetrate that crime in order to justify a verdict of guilty of murder in the first degree, based upon the fact that the homicide was committed by the defendants in the perpetration, or attempt to perpetrate, robbery. Murder is defined to be "the unlawful killing of a human being with malice aforethought, either express or implied."— Sec. 1174, 1 Mills' Ann. Stats. The statutes of the state further provide that "all murder * * * which is committed in the perpetration or attempt to perpetrate any * * * robbery * * * or perpetrated from a deliberate and premeditated design, unlawfully and maliciously to effect the death of any human being other than him who is killed * * * shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree."—Sec. 2, Laws 1901, 153; 3 Mills' Ann. Stats. Supp., sec. 1176. The degrees of murder mentioned in this section are not substantive or independent offenses. The purpose of these distinctions is to fix the punishment which shall be inflicted according to the circumstances in which the murder was committed. Section 1433, 1 Mills' Ann. Stats., designates what shall be sufficient to allege in an indictment or information for the crime of murder. *Inter*

*alia,* it provides that "in any indictment for murder * * * it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought, kill and murder the deceased."

This provision does not contemplate a charge of murder which shall specifically state any degree of that crime. If it did, or if its provisions were insufficient for any reason, then it would be necessary, in order to state the crime of murder which had not been committed in the perpetration, or attempt to perpetrate, a felony, to allege that the homicide was committed with deliberation and premeditation; and yet this court has repeatedly held that these averments are not necessary in an indictment or information for murder, but that the allegations provided by statute are sufficient to support a verdict of murder in the first degree.—*Redus v. The People,* 10 Colo. 208; *Jordan v. The People,* 19 Colo. 417; *Holt v. The People,* 23 Colo. 1.

It designates what shall be sufficient to state in any information or indictment in order to charge the crime of murder, *i. e.,* the unlawful killing of a human being with malice aforethought, as defined by the statute. Under such a charge, the person accused will be convicted or acquitted, according to the proofs, and if convicted the circumstances in which the murder was committed, as designated by the statute respecting the degree of the crime, as it is termed, determines the punishment which shall be inflicted. In short, the statute defines murder, and the section upon which counsel for defendants rely does not create or define distinct offenses of that crime, but merely distinguishes between grades of punishment which shall be inflicted upon one convicted of murder

according to the circumstances in which it was committed. Nor does the statute, in prescribing what shall be sufficient to allege in any indictment or information for murder violate any constitutional rights of the condemned which guarantees that "in criminal prosecutions the accused shall have the right  *  *  * to demand the nature and cause of the accusation." The charge was the murder of Mrs. Youngblood, and they were thus fully informed of the nature and cause of the accusation against them.—*Jordan v. People, supra; Graves v. State,* 45 N. J. Law, 345; *State v. Pike,* 49 N. H. 399; *Dwyer v. The State,* 12 Tex. App. 535; *People v. Murray,* 10 Cal. 309; *Cathcart v. Commonwealth,* 37 Pa. St. 106; 10 Enc. Pl. & Pr. 115.

A valuable discussion of these questions will be found in note 12, to *People v. Sullivan,* 63 L. R. A. 353 (393).

An additional authority in support of the conclusion why that in an indictment for murder it is not necessary to state more than the statute provides in order to sustain a conviction of murder in the first degree based upon the fact that the homicide was committed in an attempt to perpetrate one of the designated felonies, is found in the statute itself. It provides that where one indicted for murder pleads guilty, a jury shall be impaneled to determine the degree of the crime, thus clearly demonstrating that on an indictment for murder in the statutory form, the circumstances in which the homicide was committed is a matter of proof and not of pleading.

2.   The validity of the capital punishment act is attacked upon the ground that the requirements of the constitution, section 22, Art. 5, which designates the steps to be taken and the formalities to be observed in the passage of bills, were not complied with. The bill originated in the house, and the

specific objections urged which we shall consider, are, that on the passage of the bill by the senate, it was not read the third time; that the amendments made by the senate were never printed by the senate; and that the amendments made by the senate were not printed by the house. No statements upon which these objections can be successfully based appear either expressly or impliedly from the journals of either the senate or house. The house journal does show that the speaker gave notice of filing a protest against the bill, but upon what ground is not stated. It does not appear that such protest was ever filed, or any action taken thereon.

It appears from the house journal that "it was moved and seconded, that amendments were printed on senate calendar of March 29th for the use of the members. An amendment was offered that the amendments to House Bill No. 71 had not been printed on house calendar, or otherwise, for the use of the members prior to the vote on the bill." No action appears to have been taken on this motion, or the amendment, and the mere record of notice of a protest which it does not appear was ever filed or acted upon, or of a motion to amend, which the journal is silent as to any action upon, and which it does not appear were ever submitted, are insufficient from which to deduce the conclusion that the constitutional requirements with respect to the printing of amendments were not observed.

In determining whether the constitutional requirements with respect to the passage of bills have been complied with, resort can be had to the legislative journals. If it affirmatively appears therefrom, either expressly or by necessary implication, that the provisions of the constitution were not observed, then a bill is not valid. If, however, they are merely silent on this question, it must be presumed that the

fundamental law on the subject of the passage of bills was in all respects followed.—*Insurance Co. v. Loan Co.,* 20 Colo. 1; *In re Roberts,* 5 Colo. 525; *State ex rel. v. Francis,* 26 Kan. 724.

Tested by this rule, it is clear that the objections urged against the validity of the bill are not supported by the legislative journals of either branch of the general assembly. The speaker of the house also testified that the amendments to the bill were not printed for the use of the house. This testimony cannot be considered. The recitals of legislative journals, or the presumptions which attach from their silence, cannot be contradicted by verbal statements. —*Koehler v. Hill,* 60 Iowa 543.

The journal of the house discloses that the bill, after having been passed a second time, was reconsidered on a *vive voce* vote. Counsel for defendants contend that the same solemnity must attend the reconsideration of the passage of a bill that attended its original passage. This contention is not tenable. The constitutional requirement invoked, that the vote on the passage of a bill must be taken by ayes and nays, does not apply to a motion to reconsider action taken on the passage of a bill.

3. The court instructed the jury, so it is claimed by counsel for the defendants, to the effect that malice is a presumption of law, instead of fact. The court also instructed the jury to the effect that if they found from the evidence beyond a reasonable doubt, that the defendants entered the house of the husband of the deceased with intent to commit the crime of robbery, and that in the prosecution of that purpose, either of them shot and killed the deceased, then they would all be guilty of murder. On behalf of the defendants, an instruction was requested and refused the substance of which is, that the jury would not be warranted in returning a verdict of murder in the

first degree, unless it appeared that the homicide was committed by them deliberately, willfully and with premeditated malice, or that they formed a conspiracy to kill and murder the deceased, and that she was killed by one of them while in the furtherance or pursuit of the conspiracy or common design. Attention is directed to the decisions of this court, wherein it is held that malice is an inference of fact and not of law. In those cases the homicide was not committed in an attempt to commit a felony, and that is the distinguishing feature between them and the one at bar. There is no question from the testimony but that the defendants committed the homicide in an attempt to perpetrate the crime of robbery. That fact is undisputed. The element of malice does not enter into the crime of murder committed in such circumstances. The purpose of the statute was to make every homicide committed in the perpetration or attempt to perpetrate certain felonies murder, which may be punished by death, if the jury so determine, without regard to malice, deliberation or premeditation. When, therefore, the proof was undisputed that the homicide was committed in an attempt to perpetrate a robbery which the defendants had conspired to commit, it was not necessary to prove any facts from which malice, deliberation or premeditation could be inferred. So that, if the court did not properly state the law on the subject of malice, it was error without prejudice, because malice, in the legal acceptation of that term, was not an element of the crime for which the defendants were tried and convicted; nor did the court err in the instruction given, or in refusing the one requested, because the statute makes the taking of human life in an attempt to perpetrate a robbery murder in the first degree, as it is termed, which may be punished by death, without regard to the questions of

intent, premeditation, or deliberation.—*State v. King* (Utah), 68 Pac. 418; *Commonwealth v. Flanagan,* 7 Watts & Ser. (Pa.) 415; *State v. Meyers,* 99 Mo. 107.

The defendant, Peters, asked an instruction which was refused, and which, his counsel say, was framed upon the theory that to hold one guilty of a crime he must intend to commit it, or must be engaged · in some act the probable or necessary consequence of which is the act for which he is arraigned. As already stated, the question of intent was not an element of the crime for which the defendant Peters was being tried. The defendants went to the house of the husband of deceased armed with deadly weapons. Their common purpose in so doing was to commit the crime of robbery, and in the attempt to commit that crime the life of Mrs. Youngblood was taken. The crime which they conspired to commit and in the prosecution of which the murder was committed, was of a character that its accomplishment would probably require the use of that degree of force and violence which would result in the taking of human life. Each, therefore, is responsible for the act of his confederates which was the probable and natural consequence of the execution of the common design, even though it was not originally intended.—*Williams v. State,* 7 Am. Crim. Rep. 443, 81 Ala. 1; *Lamb v. People,* 96 Ill. 73; 1 Whart. Crim. Law (9th ed.), §§ 214-220; *People v. Vasquez,* 49 Cal. 560.

4. After his arrest Arnold made a voluntary confession to the chief of police, which implicated the other defendants. Andrews and Peters were then brought into the presence of Arnold for the purpose of securing from them a statement. It is claimed that at this interview Andrews was intimidated, by violence and threats, into making a confession, or

that when Arnold was repeating his story, he was prevented from making any statement denying what Arnold had said. The confessions made by the respective parties at these interviews were introduced in evidence over the objection of the defendant Andrews. Of course, if Andrews' confession was secured by intimidation or threats, it would be inadmissible, or if he was denied the privilege of making any statement at the time Arnold was detailing the facts in connection with the commission of the crime, the confession and admissions of the latter would not be admissible as against Andrews. We are convinced, from an examination of the record, that the claim on behalf of Andrews that he was intimidated into making a confession, or was compelled to remain silent while Arnold was speaking, is without foundation. It appears that when Andrews was first brought in he denied any knowledge of the crime. Arnold was then interrogated in regard to certain matters which Andrews denied, and the latter interfered and tried to prevent Arnold from making any statements. He was compelled to desist from this course by the use of violence. Later, he, himself, purported to state in detail, the facts in regard to the commission of the crime. His statements agreed substantially with those made by Arnold; so it appears that the violence used towards him was not for the purpose of compelling a confession upon his part, nor did it prejudice his rights, or place him in a position where he was entitled to have the testimony of Arnold excluded, because he was compelled to remain silent when Arnold was making his statements, because his own subsequent statements agreed in all substantial particulars with those made by Arnold. Independent of these considerations, the record discloses that the admission of the confessions of Arnold and Andrews made in the office of the chief of police could not, in

any possible view of the case, have prejudiced Andrews. After these confessions, they were taken to Colorado Springs. On the train Andrews and Arnold talked about the affair. When they were returned two days later, they also discussed the matter on the train. What they stated in these discussions between themselves was introduced at the trial. At the coroner's inquest both testified voluntarily. The statements which they made on the train, as well as those made before the coroner's jury, agree in all material particulars with the statements which they originally made in the office of the chief of police. Where one accused of a crime confesses his guilt under circumstances which would render the confession inadmissible, standing alone, yet, where he subsequently makes a confession which agrees in all substantial particulars with the one originally made, the admission of the latter is not error, when it appears that the second was clearly voluntary and beyond any improper influence which may have induced him to make the original.—*Whitney v. Commonwealth,* 74 S. W. (Ky.) 257.

5.   On the part of the defendant Peters, error is assigned on the refusal of the court to grant his application for a change of venue upon the ground of prejudice of the inhabitants of the city and county of Denver. The application was supported only by the affidavit of the defendant. Whether or not a change of venue in a criminal action shall be granted rests in the sound discretion of the court, and its action will not be disturbed unless it appears that such discretion was abused to the prejudice of the applicant. There is nothing in the record from which it appears that the court erred in denying his application. There were no questions of fact in the determination of which the jury might have been unconsciously influenced by the consideration of extraneous

matter. On the contrary, the undisputed testimony clearly supports the verdict returned against the defendant Peters, as well as his codefendants, and establishes their guilt as so determined beyond all reasonable doubt.

The judgment of the district court in each case must be affirmed, and it is so ordered.

It is further ordered that the judgments of the district court be executed during the week commencing May 21, 1905.

*Judgments affirmed.*