[No. 6853.]

## RYAN v. THE PEOPLE.

1.  **Criminal Law — Information —** An information which adopts the phraseology prescribed by the statute (Rev. Stats., sec. 1956) is sufficient to sustain a conviction of murder in the second degree.— (101, 102)

2.  ——**Murder—Premeditation—**One who, without justification, takes the life of another, with malice and deliberation, is guilty of murder, though his malice and premeditation were directed against another than the person killed.—(102)

3.  ——**Evidence—Experts—**The jury are not bound to accept the testimony of expert witnesses as to the sanity or insanity of the accused;, such testimony is to be considered as is that of other witnesses, and subjected to the same tests in de-termining the weight to be accorded to it.—(105)

4.  ——**Insanity—**An instruction that the test of the responsibility of the prisoner, is, whether he could distinguish between right and wrong at the particular time of the homicide charged, is sufficient, though the court makes no attempt to distinguish between the different forms of insanity.—(105)

5.  ——**Instructions,** as to the law of a defense of which there is no evidence, are properly refused.—(104)

It is not the province of the court to direct the jury as to what weight shall be accorded to any testimony.—(105)

6.  ——**Verdict—Polling the Jury—**Doubted if, at the common law, one convicted of felony was entitled to poll the jury. The practice common in this state is in effect a polling of the jury. The reception of the verdict in the absence of the prisoner's counsel omitting to interrogate each juror separately, invades no substantial right.—(107, 108)

But where a demand for a poll is made, it should be granted. —(108)

7.  **Writ of Error—Harmless Error—**The exclusion of testimony, the substance of which is afterwards admitted, is harmless; so of the failure to repeat an instruction already given; and the refusal of an instruction substantially given in another form; or giving an instruction which cannot have misled the jury; or an erroneous instruction as to murder in the first degree where the jury find guilty of murder in the second degree. —(103, 105, 106)

*Error to Denver District Court*—Hon. HUBERT L. SHATTUCK, Judge.

Mr. JOHN I. MULLINS, Mr. M. B. WALDRON and Mr. ALEXANDER M. SMITH for plaintiff in error.

Hon. JOHN T. BARNETT, attorney general, Mr. JAMES GRAFTON ROGERS, deputy attorney general, and Mr. ELMER L. BROCK for the people.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The defendant, John Ryan, was informed against for the murder of William Kerr on September 13, 1908. He was a man then about fifty-eight years old, and lived at the St. Louis House at Twenty-first and Blake streets, Denver. On the afternoon of that day he had trouble and an encounter with John McLaren and Archie Lang, and as a result thereof was somewhat bruised and wounded. Shortly thereafter, when a half dozen or more persons, including McLaren and Lang, were gathered in front of and near to the St. Louis House, Ryan came around the corner with a revolver in each hand, approached the door of the hotel and fired five or six shots toward the crowd, resulting in the death of William Kerr, who was unknown to Ryan and only accidentally on the scene. After Ryan's arrest, and while in the patrol wagon on his way to the city hall, he said that he had shot the wrong man, and, pointing to Lang, said: "I intended to get him."

The theory of the prosecution is that at the time Kerr was killed, Ryan was shooting at Lang or McLaren, with whom he had the difficulty. The proofs show either this to be true, or that Ryan shot indiscriminately at and toward the crowd without positive aim. The defense was insanity, the claim being that at the time Ryan fired the shot which killed Kerr he

was so deranged and distracted in mind that he did not realize what he was doing; that he could not distinguish right from wrong, and had no conception of the consequences of his act.

He was convicted of murder in the second degree, and presently thereafter, a motion for a new trial having been meanwhile overruled, sentenced to a term of servitude in the state penitentiary. To review this judgment the defendant brings the case here on error.

The information charges murder in the statutory form, and is as follows:

"Comes now George Stidger, District Attorney within and for the Second Judicial District in the State of Colorado, and in the name and by the authority of the People of the State of Colorado, informs the Court and gives the Court to understand that John Ryan, on, to wit, the thirteenth day of September, in the year of our Lord nineteen hundred and eight, at the city and county of Denver in the State of Colorado, then and there unlawfully, wilfully, feloniously, deliberately and of his premeditated malice aforethought did kill and murder one William Kerr, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Colorado."

The first objection urged by defendant is fatal variance between the allegations of the information and the proofs submitted to support them.

It is to be observed that the statute specifically states the essentials of a murder information, and these were followed in the one before us. Section 1956 of the Revised Statutes of 1908, provides:

"It shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully and of his malice aforethought kill and murder the deceased."

It has been repeatedly held by this court that an information so framed is sufficient in all cases.— *Redus v. People,* 10 Colo. 208; *Jordan v. People,* 19 Colo. 417; *Holt v. People,* 23 Colo. 1; *Cremar v. People,* 30 Colo. 363; *Andrews v. People,* 33 Colo. 196.

Section 1624 of the Revised Statutes of 1908 includes in the definition of the term "murder," all killing "perpetrated from a deliberate and premeditated design, unlawfully and maliciously, to effect the death of any human being other than him who is killed." This provision is expressly applicable to the facts and circumstances of this case. If a shot is fired, without justification, with malice and deliberation, and a killing results, the homicide is first degree murder, although the premeditation and malice were directed against one other than the person actually killed. The charge that the killing was done deliberately and with malice is sustained by proof, under this statute, that it was done with a mind filled with those qualities, though directed against some other person than the unfortunate recipient of the shot.

Wharton, in his text on homicide (3d ed.), at section 359, thus lays down the rule:

"The rule is nearly, if not quite, universal that one who kills another, mistaking him for a third person whom he intended to kill, is guilty or innocent of the offense charged the same as if the fatal act had killed the person intended to be killed;  *  *  * And a charge that a murder was done wilfully, deliberately and premeditatedly, and with malice aforethought, is sustained by proof that it was committed with a mind imbued with these qualities, though they were directed against a person other than the one killed."

And in his work on Criminal Law (10th ed.), section 514, this is stated:

''Where A. shoots into a crowd, intending to hurt or kill any one whom he may hit, and B. is killed, then A. may be indicted for the murder of B., and the indictment may aver such intent. And where A., maliciously intending to kill B., shoots at and kills C., mistaking him for B., then A. may be indicted for the intentional murder of C.''

While there may be isolated cases indicating a different rule, the current of authority is clearly in harmony with the conclusion expressed by this learned author.

The objection urged against the hypothetical question propounded to the insanity experts of the state, that it was not based upon the assumption of the truth of the matters narrated therein, is not supported by the record. The contrary appears to be true. The question was answered by all of these witnesses expressly upon the assumption of the truth of those facts. Whether they were true was a matter exclusively for the jury, and it was properly so instructed. It seems that at least one of these witnesses, and perhaps others, expressed a doubt about the truth of some of the assumptions of fact contained in the hypothetical question, but that was brought out by the defense on cross-examination, and is a matter of which complaint cannot properly be made. The question was originally answered by these witnesses on the assumption of the truth of all of those matters.

Further objection by the defendant is that certain testimony of non-expert witnesses, as to the mental condition of defendant, was excluded. This occurred because of the improper form of questions, but latterly the witnesses were recalled and the excluded matter was in substance put before the jury. So, that, on this score, there is no ground of complaint.

Of the instructions it is complained that the court erred in refusing to tell the jury, as embodied in a request by the defense, that alcoholism is a disease. In the first place there was no such defense as alcoholism offered, or anything bordering on it; and further there were no facts whatever submitted in proof which called for such an instruction, or to which it would have been applicable. This same request also called for an instruction upon the so-called "right and wrong test," which the defendant says the court erred in refusing. That precise matter was properly submitted by the court in another instruction, and there was no occasion to repeat it. It is true, as counsel for defendant contend, that the court, in the instruction given in this connection, did not undertake to distinguish between the different kinds of insanity and the causes thereof; but it did tell the jury, in substance, that the test was whether the defendant could distinguish between right and wrong at this particular time, and if, for any reason, he was unable to do so, then he was not responsible for his act and should be acquitted.

Instruction No. 5, asked by the defendant and refused, reads:

"The court instructs the jury that if the evidence in the case is sufficient to raise a reasonable doubt as to the sanity of the defendant, then the jury will find the defendant not guilty."

And instruction No. 7, also asked by the defendant and refused, reads as follows:

"The court instructs the jury that in determining the sanity or insanity of the defendant you are to give the same weight to the testimony of non-expert witnesses who testify from their own knowledge, that you give to the testimony of expert witnesses."

On the point covered by instruction No. 5 the court told the jury in substance that if, from all the

evidence, you have a reasonable doubt as to whether the defendant was so insane or distracted in his mind as to be incapable of intending all the natural, probable and usual consequences of his act, then it would be your duty to acquit him, which covers this phase of the matter quite as well as the instruction tendered by the defendant. Instruction No. 7 is manifestly wrong. It is not only not the duty of the court, but it has no power or authority, to tell the jury what weight it shall give to any testimony. The credibility of the witnesses and the weight to be given their testimony are matters exclusively for the jury to determine. That matter was properly left to them under a most comprehensive and explicit general instruction upon the subject. Speaking to this particular evidence, the court told the jury that they were not bound by the testimony of experts, and, in effect, that such testimony was to be canvassed as that of other witnesses; that in determining the weight it should have they should give it the same consideration, and subject it to the same tests, as that of other witnesses. This instruction was proper, and quite as favorable to that proposition as the defendant was entitled to have.

The matter most seriously complained of, and which it is urgently contended constitutes reversible error, is found in instruction No. 24, reading as follows:

"The court instructs the jury that if you believe from the evidence, beyond a reasonable doubt, that the defendant, John Ryan, made an assault with a revolver upon one Lang at or about the time shown by the evidence in this case, and that at the time he made such assault he intended feloniously and maliciously, with deliberation and premeditation, to kill and murder said Lang, and that while in the commission of said assault he shot and killed the deceased,

William Kerr, then you may find the defendant guilty of murder in the first degree, as charged in the information; and it is wholly immaterial whether the shot which killed the said Kerr was fired with malice, deliberation or premeditation, or not.''

The foregoing instruction can have but one possible meaning, and that obviously is that if the shot in question was fired with premeditation and deliberation, in malice aforethought, with intent to kill Lang, but killed Kerr instead, it was immaterial that such deliberation, premeditation and malice were not directed against Kerr. The instruction, when read as a whole, can have but the one meaning, and the jury could not have been misled by it. The words ''against Kerr'' are omitted, a mere clerical defect, and not fatal because not misleading, and because the instruction is incapable of being construed to mean anything other than as above indicated. It must be assumed that the jury took a common-sense view of the instruction, and gave to it its plainly apparent meaning. Moreover, this instruction is directed exclusively to murder of the first degree, and viewing the case in the light of a verdict returned of second degree murder, it becomes wholly unimportant, and even if wrong, is error without prejudice. There is no conflict in the testimony as to the main fact of the killing and the manner thereof. The evidence fully warrants a verdict of second degree murder, and puts the matter beyond question, that the instruction complained of did not and could not injure the defendant, since the instructions going to that degree of murder for which conviction was had were unobjectionable.

The verdict was received in the absence of counsel, upon the understanding that the rights of the defendant would be preserved. The jury was not formally polled. A showing was made that had counsel

been present a request for a poll of the jury would
have been interposed.   It is urged that a substantial
right of the defendant was thus invaded.   We have
no statute on this subject.   The right, if any, which
exists respecting the poll of the jury is from the com-
mon law.   That the right is absolute may be well
doubted.   What little authority we have upon the
subject rather points to the fact that at common law
the matter was in the discretion of the court and for
it to exercise if, for any reason, upon return of a
verdict there appeared a doubt as to its entire
unanimity.

In *State v. Hoyt,* 47 Conn. 518, where the prac-
tice is substantially as with us, the learned judge,
speaking to this proposition, said:

"Under such a practice there can be no propriety
in having the jury polled.   But it is claimed as a
common-law right.   It is, however, doubtful whether
at common law it was considered an absolute right.
Lord Hale states (2 Hale's P. C. 299) that when the
jury say they have agreed, 'the court may examine
by poll,' which implies that it was within the discre-
tion of the court.   In the United States the decisions
in different states are conflicting.   In *Ropps v.
Barker,* 4 Pick. 239, it was held to be not the right of
the party to have the jury polled; that when the jury
have openly, deliberately and unanimously assented
to the verdict when called on for that purpose, it
afforded all the evidence of unanimity which could
reasonably be required.   This decision has since been
followed and applied to capital trials in *Common-
wealth v. Roby,* 12 Pick. 496, and *Commonwealth v.
Costley,* 118 Mass. 1.   A similar decision in a capital
cause was also made in *State v. Wise & Johnson,* 7
Richardson 420.   We conclude this discussion by
adopting the language of Mellen, C. J., in giving his
opinion in *Fellow's case,* 5 Greenl. 333:  'As to the

exception, that the jury were not polled, it certainly cannot be sustained for a moment. The course of proceeding on the part of the court was according to uniform immemorial usage.  *  *  *  It is of no consequence whether the question proposed by the clerk to the jury, as to their affirmation of their verdict, be directed to them jointly or separately; in either case all are called on by way of inquiry, whether in open court they consent to the verdict, signed or announced *ore tenus* by their foreman. If no one objects, all are considered by their silence as expressing their consent.' "

With us the established form of procedure is to have the verdict returned in writing signed by the foreman. Upon return of the jury into the box the inquiry is whether they have agreed, and the answer is in the affirmative by the foreman. The jury is then requested to pass the verdict to the judge, who, after inspection, hands it to the clerk, to be openly read to the jury. When this is done, the inquiry follows from the clerk: "Gentlemen of the Jury: Is this your verdict?" to which assent is given by the foreman. Then follows the question: "So say you all?" and to this all give assent. This is in effect a poll of the jury. Thus, in this convenient and appropriate way, the individual opinion of each juror is in fact obtained. Under our practice the failure to poll the jury invaded no substantial right of the defendant. There appear no considerations of justice, expediency or security to the prisoner that positively require any further examination. The cases cited in support of the contention of defendant arose where a demand was made for a jury poll and denied. Such a situation presents a question which we do not now consider. As a matter of practice, when a demand for a poll is made, it should be granted. And we know of no case where, in this jurisdiction at least, there has been a refusal on such request.

We have carefully followed the arguments of counsel on all questions specifically urged. Other assignments, of which there are many, do not challenge attention. We are fully persuaded that none of the errors alleged are of a character to prejudice the rights of the defendant; they are largely technical and should not be permitted to stay the execution of a sentence pronounced upon a verdict supported by abundant testimony, and fairly within the law.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUS-SER concur.