[No. 8555.]

## COOK V. THE PEOPLE.

1. CRIMINAL LAW—*Two Acting in Concert*, in the commission of a crime, the prosecution may, even as against one tried separately, go into the entire transaction, and prove the acts and speeches of each. Evidence competent against both tried jointly, is admissible against either, tried alone. (265.)

2. —— *Evidence—Privileged Communications.* Indictment for murder. There were two trials. At the first the prisoner deposed that he had never informed his attorney how he received a certain wound. On the second, he declared the contrary. *Held* that to receive his testimony given upon the first trial, for the purpose of impeachment, was not in violation of Rev. Stat. sec. 7274 cl. 2. (266.)

The accused refused to permit the physician who attended him for the wound in question to remove the bullet, and refused to tell him how he received the wound. *Held* that to receive the testimony of the physician as to this matter was no violation of Rev. Stat. sec. 7274 cl. 4. (266, 267.)

3. —— *Insanity.* Where in a criminal prosecution the defense is insanity, in any form, professional witnesses, familiar with diseases of the mind may be examined upon hypothetical questions based upon facts presented in the

evidence, and may give opinions as to the mental condition of the prisoner at the time of the commission of the crime charged. (267.)

4. —— *Murder—Instructions.* Instructions as to the various degrees of homicide, the elements of each degree and the evidence necessary to establish each, approved. Murder perpetrated in the commission of, or attempt to commit, any of the felonies specified in the statute (Rev. Stat. sec. 1624), is murder of the first degree. In such a case, proof of a deliberate intent unlawfully to take away the life of a fellow creature need not be shown to warrant a conviction of murder in the first degree. (267.)

5. —— *Burden of Proof—Reasonable Doubt.* Indictment for murder. One defense urged being intoxication, the jury were instructed that voluntary intoxication is no excuse for crime, but that "if proven," they should consider it, in determining the defendant's ability to form an intention. (270.)

An attempt being also made to establish an alibi, the jury were told that this was legitimate defense, "if proven." It was contended that the use of the phrase, "if proven," shifted the burden of proof, as to each defense, to the prisoner. *Held* that the duty rests upon the accused to produce whatever evidence he may have of an alibi or other substantive defense, or exculpatory matter; that this does not shift the burden of proof, which rests upon the people throughout, so that if, upon the whole case, the jury entertain a reasonable doubt of the prisoner's guilt they must acquit. And the instructions having distinctly charged the jury that if they had a reasonable doubt as to the prisoner's alleged intoxicated condition, or as to his presence, at the commission of the crime, they should acquit, the contention was rejected. (271.)

*Error to Denver District Court.* Hon. JOHN A. PERRY, Judge.

Messrs. DANA & BLOUNT, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. WENDELL STEPHENS, Mr. RALPH E. C. KERWIN, Assistant Attorneys General, for The People.

GARRIGUES, J., delivered the opinion of the court.

March 26, 1912, information was filed against Edward Siewald and Oscar Cook charging them with murder. At a joint trial Cook was convicted and sentenced to be hanged, and Siewald sent to the penitentiary. We reversed the case as to Cook, and granted a new trial, upon the ground that he was entitled to a severance because their defenses were

antagonistic, and the confession of Siewald was not admissible against Cook.  See *Cook v. People,* 56 Colo. 477, 138 Pac. 756.  October 16, 1914, Cook was placed on trial separately on this information, and the jury returned a verdict finding him guilty of murder of the first degree, and fixing the death penalty.  He brings the case here on error.

Siewald was brought from the penitentiary and called as a witness by the people, but refused to testify. Omitting his testimony and confession, the evidence at the second trial for all practical purposes, was the same as at the first, and for a narrative statement of the transaction reference is made to *Cook v. People, supra.*

1.   It is unnecessary to enter into a discussion in detail of all the 53 assignments of error.  Two men committed the murder, and the theory of the prosecution, amply supported by the evidence, was that Cook and Siewald perpetrated it together, in an attempt to hold up a saloon.   Under such circumstances the court committed no error in telling the jury that Cook and Siewald were jointly indicted, while Cook was on trial alone.   Counsel seem to think that because Cook was tried alone, that only matters and things relating to his individual conduct could be given in evidence, and that what the man who was with him did in attempting to hold up the saloon, must be excluded.   Not so.   The two men who committed this murder acted in concert, and were connected in the perpetration of the crime.   One or the other of them fired the fatal shot, and under such circumstances the prosecution had a right to go into the entire transaction and prove what each did.   Evidence of acts preceding, accompanying or following the transaction which would be competent against both on a joint trial would be admissible against either tried alone.   It would have been competent for Siewald, had he not refused to testify, to give evidence of the preceding, accompanying and subsequent conduct of him-

self and Cook in the commission of the offense including all matters incident to the transaction and closely related to or emanating therefrom. All the incidents given in evidence of which complaint is made could have been properly narrated by Siewald on the witness stand; therefore it was competent if derived from other sources.

2. Cook was taken to the hospital suffering from a serious gunshot wound inflicted the night of the murder. He testified on the trial this wound was inflicted by the watch- man in a lumber yard where he was trespassing. On the first trial he testified on cross examination, without objection, that he never told a living soul, not even his attorneys before he went upon the witness stand, where or how he received this wound. On the second trial he testified that he had told his attorneys, before the first trial, how he received it, and the court allowed the prosecution for the purpose of impeachment to read to the jury his former evidence in this regard. While defendant was at the hospital he was attended by a physician who testified that Cook refused to allow him to remove the bullet or to tell him how he received the wound. Counsel say these were privileged communications, and could not be inquired into. Regarding this subject, our statute provides in part as follows:

"Second—An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

"Fourth—A physician or surgeon duly authorized to practice his profession under the laws of this state, shall not, without the consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."—R. S. 1908, §7274.

We do not think either objection is well taken. How he came to be shot, or that he would not consent to have the bullet

removed was not necessary information to enable the doctor to prescribe or act for his patient. Defendant testified at the former trial without objection that he had not told anyone before he went upon the witness stand, not even his attorneys, how he received this wound. Upon the second trial he testified he had told his attorneys and the record of his evidence on this point at the former trial was read simply for the purpose of impeachment. This violated no provision of the statute.

4. A defense was, that defendant was laboring under depressed insanity when he committed the homicide. The qualities of such a disease require study and experience and are not matters of common knowledge. The court therefore properly allowed expert witnesses on insanity to be asked hypothetical questions based on certain assumed facts involved in the evidence and permitted them to give their opinion as to the mental condition of defendant when he participated in the transaction.

5. Error is assigned to the giving of many instructions and the refusal to give instructions prayed. The court told the jury they were to decide whether the defendant was guilty of murder of the first degree, murder of the second degree or not guilty, and that there was no evidence in the case to which the law of manslaughter was applicable, the latter part, defendant says, was improper. This was a proper instruction under the facts of this case and the court committed no error in refusing to instruct upon manslaughter.—*Smith v. People,* 1 Colo. 128-144; *Crawford v. People,* 12 Colo. 290-292, 20 Pac. 769; *Kelly v. People,* 17 Colo. 130-133, 29 Pac. 805; *Mow v. People,* 31 Colo. 352, 72 Pac. 1069; *Carpenter v. People,* 31 Colo. 284, 72 Pac. 1072; *Johnson v. People,* 33 Colo. 226-241, 80 Pac. 133, 108 Am. St. Rep. 85; *Demato v. People,* 49 Colo. 148, 111 Pac. 703, 35 L. R. A. (N. S.) 621, Ann. Cas. 1912A, 783; *Reagan v. People,* 49 Colo. 317, 112 Pac. 785; *Mitsunaga v. People,* 54 Colo. 102, 129 Pac. 241.

6. The court instructed the jury in substance that murder under our statute was divided into murder of the first degree, and murder of the second degree; that murder is the unlawful killing of a human being with malice aforethought, either express or implied; that any unlawful and malicious killing of a fellow creature was murder; that malice was divided into express malice and implied malice; that malice shall be implied when no considerable provocation appears, or when all circumstances of the killing show an abandoned and malignant heart; that express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof; that murder committed with premeditation and deliberation, or committed in the perpetration or attempt to perpetrate any robbery or burglary, was murder of the first degree; that if the killing of deceased was unlawful and malicious, but none of the above ingredients were present, it would be murder, but not murder of the first degree. They were also told that if Cook fired the fatal shot with a deliberate intention unlawfully to take away the life of the deceased, that is, if the jury found express malice, or if the murder was committed in the perpetration or attempt to perpetrate a robbery or burglary, or if Siewald did either of the above acts, and Cook was present aiding and abetting as an accessory, then in either event Cook would be guilty of murder of the first degree; that if Cook unlawfully and maliciously fired the fatal shot, but without such deliberate intention unlawfully to take away human life, that is, without the element of express malice as defined by our statute, and not in the perpetration or attempt to perpetrate a robbery or burglary, or if Siewald did either the enumerated acts under such circumstances, and Cook was an accessory, that Cook would be guilty of murder of the second degree. We find no error in these instructions. If no considerable provocation appeared, or if all circumstances of the killing showed an

abandoned and malignant heart, the statute says malice shall be implied. This alone would be proof of a malicious killing and sustain a conviction of murder. If in addition to this, the evidence shows a deliberate intention unlawfully to take away the life of a fellow creature, this is proof of express malice and will sustain a verdict of murder of the first degree. But the statute further provides that all murder committed in the perpetration or attempt to perpetrate certain felonies shall also be murder of the first degree; in other words, where the murder is committed in the perpetration or attempt to perpetrate such felonies, proof of a deliberate intention to take away human life is not necessary to sustain murder of the first degree. Where murder is committed under such circumstances, it is difficult to conceive of any considerable provocation, and all circumstances of the killing would show an abandoned and malignant heart. Any killing, therefore, committed in the perpetration or attempt to perpetrate any of these felonies necessarily includes implied malice and is murder because it answers every statutory definition of the crime of murder; but, with regard to the punishment, the statute goes further and expressly provides that a killing under such circumstances shall be murder of the first degree and we have repeatedly held where the evidence shows such a killing, that proof of deliberation and premeditation was not necessary to sustain murder of the first degree. In *Andrews v. People*, 33 Colo. 193-201, 79 Pac. 1031, 108 Am. St. 76, speaking of a killing committed in the perpetration of a felony, we said:

"The element of malice does not enter into the crime of murder committed in such circumstances. The purpose of the statute was to make every homicide committed in the perpetration or attempt to perpetrate certain felonies murder, which may be punished by death, if the jury so determine, without regard to malice, deliberation or premeditation. When, therefore, the proof was undisputed that the homicide was committed in an attempt to perpetrate a rob-

bery which the defendants had conspired to commit, it was not necessary to prove any facts from which malice, deliberation or premeditation could be inferred. So that, if the court did not properly state the law on the subject of malice, it was error without prejudice, because malice, in the legal acceptation of that term, was not an element of the crime for which the defendants were tried and convicted; nor did the court err in the instruction given, or in refusing the one requested, because the statute makes the taking of human life in an attempt to perpetrate a robbery murder in the first degree, as it is termed, which may be punished by death, without regard to the questions of intent, premeditation, or deliberation."

7. Upon the defense of intoxication, the court told the jury in substance that voluntary intoxication as a rule was no excuse for crime; still, "if proven," it should be considered by them upon the question of defendant's ability to form any intention; that as used in these instructions intoxication means intoxication to such an extent that it overthrows the will and renders it incapable of directing the person's conduct, or being able to form an intention and if from all the evidence on the trial they had any reasonable doubt about his being so intoxicated as to render him incapable of forming a deliberate intention unlawfully to take away human life or to commit the crime of murder, they must acquit.

Upon the question of an alibi the court told the jury that this was as proper and legitimate a defense, "if proven," as any other and if upon the whole case they had a reasonable doubt as to whether defendant was in some other place when the murder was committed, they should find him not guilty. Complaint is made that using the phrase "if proven," shifted the burden of proof from the people to the defendant, and required him to prove an alibi or such intoxication, whereas if the evidence raised a reasonable doubt regarding either of these defenses, he was entitled to an

acquittal.  In 2 Chamberlayne on Modern Evidence, §977a, it is said in substance that the accused must prove any independent exculpatory or substantive defense upon which he relies, and in this respect and to this extent the burden rests upon him.  Notwithstanding this, if after all the evidence is in, it is found that, upon the whole case, the people have not sustained the burden of proof, and have not convinced the jury of the defendant's guilt beyond a reasonable doubt, he should be acquitted.  And at paragraph 973, it is said in substance, that the burden continues throughout the trial to be upon the prosecution, when disputed, to show that the defendant was present at the scene of the alleged act, when it was committed, and if upon the whole case a reasonable doubt is left in the minds of the jury as to whether the accused actually was present at the scene of the crime at the time when he must have been there in order to have committed it, he is entitled to an acquittal.

We think the duty rests upon the accused to introduce any evidence he may have in proof of a substantive defense or of exculpatory matters, or of an alibi; but this does not change or shift the burden of proof which always rests upon the people throughout the trial to prove the guilt of the defendant from the evidence beyond a reasonable doubt and if upon the whole case the jury have a reasonable doubt of the defendant's guilt, they should acquit.  The instruction given came within these rules and distinctly told the jury the burden of proof was upon the people to prove every material allegation necessary to convict the defendant of murder of either degree and if upon the whole case, after a full consideration of all the evidence upon the trial, they had a reasonable doubt as to such intoxication, or as to the presence of the defendant at the commission of the murder, they should give him the benefit of the doubt and acquit him.

8.  Complaint is made that the conviction rests alone upon circumstantial evidence and under our statute the jury could not inflict the death penalty.  The conviction does not

rest alone, in this case, upon circumstantial evidence as claimed by the defendant. We have read the record and find sufficient direct evidence identifying Cook as one of the men who participated in this murderous transaction. The judgment of the lower court is affirmed.

It is further ordered that the judgment be executed during the week commencing February 20, 1916.

*Affirmed.*

Decision *en banc.*

SCOTT, J., concurs in the conclusion.

Decided November 1, A. D. 1915. Rehearing denied December 6, A. D. 1915.