## W. E. POWELL v. THE STATE.

*No. 2876.   Decided March 8.*

**1.   Charge of the Court—Malice.**—The charge of the court defines malice as the "intentional doing of a wrongful act toward another without legal excuse or justification."  *Held,* sufficient.

**2.   Same—Reasonable Doubt.**—The rule is that in prosecutions for murder the charge of the court should apply the doctrine of reasonable doubt as between the different degrees of homicide involved in the case.   But if such an instruction be substantially given in general terms, though not in the language of the statute, and no special instruction upon the point be requested, the charge will be held sufficient.   In this case the court instructed the jury that in order to warrant a verdict for murder in the second degree they must believe from the evidence, beyond a reasonable doubt, that defendant committed the homicide with malice implied, etc.   *Held,* in the absence of a requested additional instruction, sufficient to submit the rule of reasonable doubt as between murder of the second degree and manslaughter.

**3.   Same.**—If the charge of the court instructs generally upon the doctrine of reasonable doubt, applying it to the whole case, it is sufficient.

**4.   Same—Manslaughter—Threats—Self-Defense.**— See the statement of the case for charges of the court upon manslaughter, threats, and self-defense, *held* applicable to the facts and correct.

**5.   Murder of the Second Degree—Fact Case.**—See the statement of the case for the substance of evidence *held* sufficient to support a conviction for murder in the second degree.

APPEAL from the District Court of Johnson.   Tried below before Hon. J. M. Hall.

This conviction was in the second degree for the murder of John Howard, in Johnson County, Texas, on August 12, 1888.   The penalty assessed against the appellant was a term of eight years in the penitentiary.

Mrs. Bettie Howard, the wife of the deceased, testified for the State, in

substance, that she was the sister of the defendant. The witness, with her infant child, went to her mother's house, where the defendant lived, about a week before the homicide. During that week she was visited three times by her husband, on neither of which occasions was the defendant at home. On the Friday preceding the fatal Sunday morning it was agreed between witness and her husband, in the presence of witness's mother, that deceased should go to Alvarado on Saturday, purchase supplies and furniture for housekeeping, and come for witness and the baby on Sunday. Witness did not know whether or not the defendant was aware of that arrangement, but he saw her packing her trunk on Saturday night. On Sunday morning deceased drove up to the front fence in a wagon, got out, and came into the house. Just before he entered the house the witness heard the defendant say to the deceased, "Howard, don't go in that house." Witness seized a bundle which she took to the wagon, passing her husband going into the room as she went out. She immediately returned from the wagon, and on her way into the house passed her two brothers, the defendant and Walter Powell, and the deceased, who had her trunk in his hands. Deceased and defendant were quarreling. After passing the parties she heard defendant say, "Howard, didn't I tell you not to go into the house?" Deceased replied, "Yes, but it will take a better man than you to keep me out of it." Two shots were then fired in quick succession, and deceased fell. Witness ran to him, raised up his head, and asked defendant, "Willie, why did you do this?" He replied, "He threatened yesterday in Alvarado to kill me." Witness's back was to the parties when the shots were fired, and she could not say what, if anything, the deceased was doing when shot.

On her cross-examination the witness stated that she knew that her husband entertained hard feeling toward the defendant, and that on the Friday preceding his death he told her that he intended to kill defendant. Mrs. Powell, witness's mother, witness's sister Mamie, and a Miss Anthony were in the sitting room at the time of the killing.

Miss Anthony, testifying for the State, corroborated Mrs. Howard as to the conversation between defendant and deceased which immediately preceded the shooting, but stated that she was in the room with her back to the door and did not see the shots fired. Walter Powell testified for the State, substantially, that when deceased started into the house defendant said to him, "Howard, don't go in that house." Deceased, however, went in, and soon came out, bearing a trunk, when defendant said to him, "Howard, didn't I tell you not to go into that house?" Deceased replied, "Yes, but it will take a d—d sight better man than you to keep me out of it." Deceased then put the trunk down and threw his right hand to his hip pocket, and defendant fired the fatal shots.

Miss Mamie Powell, testifying for the defense, located herself in the room in a position to see the deceased but not the defendant at the mo-

ment of the fatal shooting. She stated the conversation between defendant and deceased as Walter Powell did, and corroborated Walter Powell in his statement that deceased threw his right hand to his hip pocket immediately before the fatal shots were fired.

Other witnesses for the State testified to threats uttered against the life of defendant by the deceased, and it was proved by two witnesses that, after death, an open pocket knife was found in the deceased's right hip pocket.

The charges of the court referred to in the fourth head note of this report read as follows:

"Manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law. By the expression 'under the immediate influence of sudden passion' is meant that the passion must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation. The act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by passion arising from some other provocation. The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror sufficient to render the mind incapable of cool reflection. By the expression 'adequate cause' as used herein is meant such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Insulting words or gestures are not of themselves sufficient to reduce an unlawful killing from the degree of murder to the grade of manslaughter. * * *

"That you may understand the difference between murder of the second degree and manslaughter, you are further instructed that when an unlawful killing takes place under the immediate influence of sudden passion, and there is no evidence which tends to excuse or justify the killing, then to determine whether the offense is murder of the second degree or manslaughter, the true test is, was there adequate cause to produce such sudden passion? And if there was adequate cause for such sudden passion the homicide, if unjustifiable, would be manslaughter; but if there was not such adequate cause, and if the killing be unjustifiable, the offense will be murder of the second degree. And in this connection you are instructed that while insulting words or gestures are not sufficient of themselves to produce an adequate cause and reduce an unlawful killing to manslaughter, yet, when taken together they may be sufficient, where either or both is taken in connection with any other exciting cause or condition, it may be sufficient to produce such adequate cause, and may be sufficient to reduce an unlawful killing from murder of the second degree to manslaughter; but in passing upon the question of whether the defendant is guilty of manslaughter you will consider this paragraph of the

charge in connection with the entire charge, so as to decide the case before you. The court further instructs you that if you believe from the evidence beyond a reasonable doubt that the defendant, in the county of Johnson, State of Texas, about the time alleged in the indictment, with a pistol shot and killed John Howard, and that such killing was not justifiable under the law of self-defense as hereafter explained, and shall believe from the evidence that at the time the defendant shot and killed John Howard, said Howard was quarreling with and abusing the defendant, or that the deceased had, over the protest of defendant, entered the house of the defendant's mother, and that deceased had previously threatened the life of the defendant, and that the defendant knew of such threats, or that the deceased was a larger and stronger man than the defendant; and if you further believe from the evidence that the language of said Howard at the time of the shooting, if any, taken in connection with all the facts in evidence, was of such nature and character as to produce an adequate cause sufficient to render the mind of the defendant incapable of cool reflection, and that acting under the immediate influence of such sudden passion, if any, the defendant shot and killed said John Howard, then you will find the defendant guilty of manslaughter, and you will assess his punishment at confinement in the penitentiary for any time not less than two years and not more than five years, and so say by your verdict.

" But on the other hand, if you believe from the evidence that the defendant shot and killed said Howard, but that prior to said killing the said Howard had threatened to take the life of the defendant, or to do the defendant serious bodily harm, and that the defendant knew of such threats, if any, and that at the time said Howard was shot, he, by some act then done or words spoken coupled with his acts, if any, showed an immediate intention to carry such threats, if any, into execution; and if from all the facts known to the defendant he had reason to believe, and did believe, that he was about to suffer death or serious bodily harm at the hands of the deceased, and acting under such apprehension, if any, of danger as the same 'reasonably' appeared to him, defendant at the time he fired the fatal shot that took the life of said Howard, to protect himself from such apprehension, if any, of danger, then he would have the right to continue to shoot until he found himself out of danger as it appeared to him; and if you believe from the evidence that the defendant acted upon such reasonable apprehension of danger at the time he fired said shots, then you will find him not guilty, and so say by your verdict.

" You are further instructed that if you believe from the evidence that defendant shot and killed said Howard as alleged in the indictment, but that at the time he did so it reasonably appeared to the defendant from all the facts and circumstances known to and surrounding him at

the time, and, viewed from his standpoint, he believed that it was then and there the purpose of said Howard to take the life of him, the defendant, or to do him serious bodily harm, then the defendant was not bound to retreat, but he could stand his ground and defend himself; and if you believe from the evidence that he so acted, you should acquit him, and so say by your verdict.

"If the defendant was in charge of his mother's premises as the head of the family, and if he forbade the deceased from entering said house, then he would have the right to use such force as would be necessary to keep the deceased out of said house; but if the deceased did enter said house over the protest or command of the defendant, then the defendant would not be justifiable in killing the said Howard because he did enter said house over the protests and commands of him, defendant; and if he did kill the deceased because he entered said house, and said killing was upon express malice as herein explained, then he would be guilty of murder of the first degree; if done with implied malice as hereinbefore explained, then he would be guilty of murder of the second degree; and if done with sudden passion arising from an adequate cause as herein before explained, then he would be guilty of manslaughter; and if done in self-defense as before explained, then he would be in law justifiable, and you should, if you so believe from the evidence, acquit him. If under the evidence and the instructions given in this charge you have a reasonable doubt of the guilt of the defendant, then you will acquit him."

*Crane & Ramsey*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—Several objections to the charge of the court are presented and insisted upon by counsel for defendant. As the conviction is for murder in the second degree, the charge upon murder in the first degree will not be considered.

It is objected that the definition given in the charge of "malice" is insufficient and erroneous. This court has repeatedly held to the contrary. Gallaher v. The State, *ante*, 247.

An exception to the charge upon murder in the second degree was reserved because the rule of reasonable doubt was not applied therein. It is true that in prosecutions for murder it is proper that said rule should be applied as between the different degrees of homicide involved in the case. McCall v. The State, 14 Texas Ct. App., 353; Murray v. The State, 1 Texas Ct. App., 417. But if such an instruction be substantially given, though not in the precise language of the statute, and no special instruction upon the point be requested, the charge will be held sufficient. Hodges v. The State, 6 Texas Ct. App., 615. In this case the

jury was instructed that in order to warrant a verdict finding defendant guilty of murder in the second decree, they must believe from the evidence, beyond a reasonable doubt, that defendant committed the homicide with malice implied, etc. We think this was substantially instructing as to the rule of reasonable doubt between murder in the second degree and manslaughter, and no additional instruction relating to this point was requested by the defendant..

With respect to the charge on threats and self-defense, the objection is urged that it requires the jury to *believe* that the facts existed which constituted self-defense before they could acquit defendant, whereas the law is that if they entertained a reasonable doubt of the existence of such facts they should acquit him. In this case the court charged the rule of reasonable doubt generally, making it applicable to the whole case, and under repeated decisions of this court this was sufficient. McCullough v. The State, 23 Texas Ct. App., 620; Ashlock v. The State, 16 Texas Ct. App., 13; Barr v. The State, 10 Texas Ct. App., 507. The cases cited upon this point by counsel for defendant are not in point, and do not sustain the objection urged by them. We are of the opinion that the charge on the issues of manslaughter, threats, and self-defense are applicable to the facts in the case, and are sufficient and correct.

Several special instructions were requested by counsel for defendant and were refused. We have given our attention to said instructions, and without discussing them, will say that in our judgment most of them are substantially embraced in the charge given by the court, and those not so embraced were properly refused because incorrect.

We find no error in the record for which in our opinion the conviction should be set aside. We think the evidence supports the conviction. We therefore affirm the judgment.

*Affirmed.*

Hurt, J., absent.