### Jeff Scott v. The State.

No. 2778.   Decided June 1, 1904.

**1.—Evidence—Res Gestae—Murder.**

Where appellant offered to show that within a few minutes after the homicide he stated to the witness that his pistol had been discharged by some person running against him while he was engaged in making an arrest, and that while appellant was making this statement the sheriff came up and ordered his arrest that he had killed a man, whereupon appellant said he must be mistaken, but if true that the killing was unintentional and that his pistol went off accidentally when he was making an arrest, which statement was offered in connection with facts already testified to by the witness upon this subject, it was held that appellant's statement was admissible as res' gestae.

**2.—Argument of Counsel—Remarks by Judge.**

The State's attorney in his remarks may enjoin the jury not to arrive at a verdict by lot, and when he inadvertently used the term "ballot" and was corrected by the judge by suggesting the word "lot," there was no error.

**3.—Charge of the Court—Accident—Unintentional.**

A charge which instructed the jury that if they believed beyond a reasonable doubt that the shooting by appellant was accidental and not intentional, to acquit him, does not make it too onerous.

**4.—Accomplice—Unconnected Transaction.**

The mere fact that a party went with appellant to make an arrest, with or without lawful authority would not make him an accomplice to a homicide which appellant committed that was not in contemplation of the parties and directly connected with the unlawful act, if it be conceded to be unlawful, that they agreed to commit.

Appeal from the District Court of Jefferson.   Tried below before Hon. A. T. Watts.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The State's testimony was that deceased had been taken by appellant with other boys or men from a room near a saloon at night; that the deceased ran through a crack in a plank fence and the defendant went

to the corner of the fence and just then another man ran right by him; defendant must have been after deceased; it took him two or three seconds to get from the corner of the fence to where deceased was and just a little after that the defendant's pistol fired. Deceased was lying about twenty feet from the fence corner; he was shot in the back between the shoulders; deceased was not disturbing anyone, when defendant told him to get up and come on out with the other boys; he was in the little room asleep when defendant came. The manager of the saloon had asked defendant to come there after these men. When defendant came back to get the boys out of there he went in with the proprietor of the saloon and he brought out several boys with him, among whom was the deceased. The proprietor remarked to defendant that deceased did not give him any trouble and to turn him loose, and defendant turned away from him and inquired about the others they had brought out of the room. One of the State's witnesses testified that the defendant pointed his pistol in the direction the deceased ran and fired, and that the deceased fell and died shortly after. This witness was shown by other witnesses to have made contradictory statements about the killing.

The defense was that the defendant had been ordered to arrest a lot of vagrants who were in the habit of sleeping in a place near, or connected with a saloon in the city of Beaumont. That on the night of the homicide the defendant with other officers had called at the saloon at about 7 o'clock and were told by the proprietor to return at a later hour; whereupon defendant was told to remain and that the other officers would return later. In the meantime defendant, after remaining a short while, was advised by the proprietor of the saloon that a number of vagrants had come and were asleep in the little room, whereupon he and defendant went in and brought out five or six, and the deceased being among the number was turned loose, upon the request of the said proprietor, and ran away; that about this time, in trying to secure the arrest of the others, one or more persons ran against the defendant and he fell against the fence corner and that his pistol went off accidentally; that he had not drawn his pistol to shoot anyone, but that someone had struck him in the back on the side where he had his pistol, and that out of caution he took it out and held it in his hand at the time he fell against the fence. The defendant arrested two of the alleged vagrants and took them to jail, and was telling the jailor that some one had run against him while he was making the arrest and that his pistol was discharged accidentally; that then the sheriff came up and ordered the arrest of defendant, saying that he had killed a man, and defendant again stated that if he did it was done by accident, etc.; that this occurred about fifteen minutes after the homicide.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years.

The bill of exceptions shows that defendant offered to prove by witness Russell Holder that defendant stated to him, about 9 o'clock of the night of the homicide, at the county jail, which was within three or five minutes walk of the place of the alleged killing, that his (defendant's) pistol had been discharged by some person running against him while he was engaged in making an arrest of several vagrants at Rowland & Folley's saloon. And that while defendant and witness Holder were talking about the matter officer Jake Douglass came to the jail where they were, and told witness Holder, who was jailer, to hold Jeff Scott, as he had killed a man. And thereupon defendant said that it must be a mistake; but if it was true he had done so unintentionally, and that his pistol went off accidentally when he was arresting parties, and that he did not know that the ball struck any one, and he could not think it did, as he would have known it if it had. This testimony was offered, as the bill shows, in connection with the following facts already testified by said witness Holder: "I was jailer at the time of this shooting. Jeff Scott brought two persons to the jail somewhere about 9 or 9:30 o'clock that night; said he had arrested them at Rowland & Folley's saloon. I took the prisoners he brought and locked them up in the jail. I had this conversation at the jail in Beaumont. I can walk from Rowland & Folley's saloon to the jail in about three minutes, anyway five minutes. It is about six blocks distant. Yes, in this conversation Jeff Scott told me other things; and while we were talking, officer Jake Douglass came to the jail and told me to hold Jeff Scott as he had killed a man." Appellant offered this testimony on the ground that it was res gestae. The court approves the bill with the following qualification: "The witness Holder said that he knew nothing about when the shooting took place; that the jail and courthouse, where he must have been at the time, are about eight blocks or about one-half mile from the Foley & Rowland saloon, where the shooting occurred; that he did not know where defendant had been nor what he had done between the time the shooting took place up town and the time defendant came to where said witness was at the courthouse. And the court further explains that defendant himself testified that after the shooting he took charge of two other prisoners, and walked from the place of the shooting to the courthouse and jail; and that he never got to the courthouse and jail before ten or fifteen minutes after the shooting; and the court sustains the objection by the county attorney to the proffered testimony on the part of the witness Holder on the ground that such testimony was not admissible as res gestae and was self-serving." The bill of exceptions shows that this testimony is res gestae. The court erred in excluding the same. Freeman v. State, 40 Texas Crim. Rep., 545.

Bill of exceptions number 2 complains that during the speech of

the county attorney to the jury, he was enjoining upon the jury not to arrive at a verdict by lot, and in doing so he used the word "ballot" instead of "lot." Thereupon the court corrected counsel, using the following language: "You mean that would be arriving at a verdict by lot or chance." We see no error in the statement of the court. It was proper for the court and for the State's counsel to enjoin upon the jury not to arrive at their verdict by lot or chance.

Various errors are assigned as to the admission of testimony, but no bill being reserved we can not consider them.

Appellant objects in the eighth ground of his motion for new trial to the twenty-first paragraph of the court's charge, because the same required the jury to believe that the shooting was accidental beyond a reasonable doubt before they could acquit defendant; and because said charges fixes too onerous a rule, in that it requires that the shooting must have been both accidental and not intentional. The charge complained of is as follows: "If you believe from the evidence beyond a reasonable doubt that defendant, Jeff Scott, about the time alleged in the indictment, did shoot and thereby kill the deceased, John T. Williams; and you further believe from the evidence that such shooting was accidental, and not intentional upon the part of defendant, then and in that event the homicide is excusable, and if you so believe from the evidence, or if you have a reasonable doubt thereof, then you will find defendant not guilty." We think the charge is correct, and not subject to the criticism urged by appellant. Hull v. State, recently decided.

The ninth ground of the motion for new trial insists that the court erred in not charging the jury that Tom Lewis was an accomplice, because the testimony in this case makes said witness an accomplice. We do not agree with this contention. The mere fact that Lewis went with appellant to arrest parties for vagrancy, with or without lawful authority, would not make him accomplice to a homicide that appellant committed that was not within contemplation of the parties and directly connected with the unlawful act, if it be conceded to be unlawful, that they agreed to commit. In other words, we hold that Lewis had no guilty participation in the shooting, was not consenting to it, aiding, advising or in any manner connected with said shooting, such as to require the court to charge on the law of accomplice.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*