Mathley v. Commonwealth.

---

Case 50.—PROSECUTION AGAINST ROBERT MATHLEY FOR MURDER.—April 26.

## Mathley v. Commonwealth.

Appeal from Daviess Circuit Court.

T. F. BERKHEAD, Circuit Judge.

Defendant convicted and appeals.    Affirmed.

Homicide—Defense—Insanity — Instructions — Evidence — Letters Showing Motive—Competency.

1. Homicide—Defense—Insanity—Instructions—Where the undisputed evidence shows that the defendant deliberately and without apparent cause shot and killed a young girl, with whom he was in love and wanted to marry, but who had refused to marry him, and also at the same time mortally wounded his rival, who was with the girl, the only defense being as to his sanity at the time, the following instructions, given by the court, are held to be proper.

"No. 7. The court further instructs the jury that the law presumes every man sane until the contrary is shown by the evidence, and before the defendant can be excused on the grounds of insanity the jury must believe from the evidence

that the defendant at the time of the killing was without suffi-
cient reason to know what he was doing, or that, as the re-
sult of mental unsoundness, he had not then sufficient will
power to govern his action by reason of some insane impulse
which he could not resist or control.

"No. 8. The court further instructs the jury that although
they may believe from the evidence that the defendant at the
time of the killing of Emma Watkins was without sufficient
power to govern his action by reason of some impulse which
he could not resist or control, yet if they further believe from
the evidence that such lack of reason to know right from
wrong, or such insufficient will power to govern his actions or
to control his impulses, arose alone from voluntary drunken-
ness, but not from unsoundness of mind, they should not ac-
quit the defendant on the grounds of insanity."

2. Evidence—Letters Showing Motive—Competency—Letters taken
from the possession of defendant at the time of his arrest,
which he admitted were given to him by the deceased, which
tend to establish the cause of jealousy on his part, and tend
to furnish a motive for the killing, are clearly admissible in
evidence.

E. D. GUFFY, J. R. HAYS, LITTLE & SLACK for appellant.

POINTS CONTENDED FOR.

1. It was error, upon the trial of appellant, upon the charge
of having murdered Emma Watkins, to permit the Commonwealth
to read to the jury letters written to her by others than defend-
ant. Letters were ordered filed, over defendant's objection.

2. It was error to permit the witness, Mrs. Warren, to testify
that she had heard Emma Watkins (in a conversation prior to
the day of the homicide) accuse defendant of having, theretofore,
pointed a pistol at her. If he had previously pointed a pistol at
her his act was a distinct offense, and for which he was not being
tried. In addition, the evidence was hearsay, and he made no re-
sponse to her accusation. (Merriweather v. Commonwealth, 26
Ky. Law Rep., 793.)

3. It was error to permit L. G. Arment, a physician, who made
no physical examination, to testify that Emma Watkins, four
weeks prior to the homicide, stated to him that she was then
pregnant. This evidence was hearsay, and also highly prejudicial,
in view of the effort by the Commonwealth to show defendant
was the father of her unborn child, and it should have been ex-
cluded on defendant's motion

4. (a.) It was error to permit Mrs. Jeane Hester and Mrs. John
Gregson to testify that about one week before the homicide they

Mathley v. Commonwealth.

heard Emma Watkins say that defendant was then detaining her in an upstairs room, in his house.

For reasons given in the Merriweather case he was not to be bound by her statements to those witnesses, even though he heard her make them.

(b.) If relevant at all, it was incumbent upon the Commonwealth to prove the fact of detention, and not competent to prove statemens of the deceased to the witness, and, even if the silence of defendant be construed as an admission that he had committed the offense of detaining a woman, it is not competent in absence of testimony that such an offense had been committed. (7 A. & E. Ency. [2], 864.)

(c.) This evidence did not show any inducement or motive, and was not competent for any purpose. It was evidence tending to show that defendant had previously committed another offense, to-wit, the offense of detaining the deceased against her will, and, therefore, error. (Sewell v. Commonwealth, 3 Ky. Law Rep., 86; Martin v. Commonwealth, 93 Ky., 189.)

5. It was error to refuse to permit defendant's witnesses to state the facts as to specific acts of defendant and his relatives, indicating their insanity, and error to refuse to permit witnesses to state facts as to difference in appearance of defendant shortly prior to and since the killing (during which period it was claimed he was insane) and his previous appearance (when it was claimed he was sane.) (Taylor's Med. Jurisprudence, p. 750.)

6. Instruction No. 8, while a copy of an approved instruction given in Wright v. Commonwealth, 24 Ky. Law Rep., 1841, still it should not have been given in this case.

In that case the defendant, over the objection of the Commonwealth, made proof as to his drunkenness at the time of the homicide, and as to the effect of liquor upon the mind of persons subject to hereditary taint of insanity.

In this case the defendant made no claim and offered no evidence on the subject of the effect of liquor upon one affected by such taint.

The Commonwealth proved by the only eyewitness to the killing that he was not then drinking to amount to anything, and also proved by numerous witnesses that during a period of several months prior to the homicide the defendant had been drinking to excess, and the defendant's attorneys constantly endeavored to combat such evidence and show he had not.

While it may have been proper for the Commonwealth to prove defendant's previous drunkenness, in order to show that he was drunk, instead of insane, and that his previous acts could thus be accounted for, it was not proper for the Commonwealth to have the jury instructed that if "defendant * * * was with-

out sufficient reason, etc, yet, if  *  *  *  such lack of reason, etc., arose alone from voluntary drunkenness, but not from unsoundness of mind, they should not acquit the defendant on the grounds of insanity.

In view of the labored effort on the part of the Commonwealth to show the previous drunkenness of defendant the jury was authorized, or at least liable, to construe the instruction to mean that "if his insanity was caused by his previous drunkenness it was no excuse."

As defendant made no claim or proof of drunkenness, it was not proper to instruct on that subject, but if proper, it was the duty of the court to have told the jury the purpose for which the evidence of previous drunkenness was to be considered, and instructed (as in No. 6) that if defendant was of unsound mind at the time of the killing, they should acquit, but that if he was then simply under the influence of liquor, and the effect of the liquor was the sole cause of his lack of reason, then he should not be acquitted on account of insufficient will power, etc.

The instructions, as given, were grossly misleading. It was a misfit in this case.

7. It was the duty of the court to instruct the jury upon the whole law of the case, and if the testimony of the witnesses, Mrs. Gregson and Mrs. Hester, hereinbefore mentioned, was competent to show motive, then the court should have instructed the jury as to the only purpose for which such evidence was to be considered by them. (Martin v. Commonwealth, 93 Ky., 189.)

8. It was error to instruct the jury that the law presumed defendant was sane, as in instructions No 6 and 7, and to refuse to give instruction "X," to the effect that the burthen was upon the Commonwealth to prove his sanity; if they entertained a reasonable doubt as to his sanity they should acquit.

It was incumbent upon the Commonwealth to prove defendant was legally capable of committing crime, as a vicious will is an essential element to constitute a crime, and one without mind can not have a vicious will. (Davis v. United States, 160 U. S., 482.)

By instructions No. 6 and 7, given by the court, and the failure of the court to give instruction "X" asked by defendant, he was denied a fair and impartial trial, and thereby deprived of his life by the State, and by the judge, who is the representative of, and an arm of, the State, and thus deprived without due process of law, and thus denied the equal protection of the laws, contrary to the Constitution of the United States, and the amendments thereto, and particularly article 14 thereof. (Chicago, B. & Q. R. R. Co. v. Chicago, 166 U. S., 226; Coffin v. United States, 156 U. S., 432; Cochran v. Same, 157 U. S., 287; Buckles v. Commonwealth, 113 Ky., 795.)

Mathley v. Commonwealth.

N. B. HAYS and CHARLES H. MORRIS for appellee.

1. The only excuse offered for this uncalled for and brutal murder is the insanity of appellant. As an impartial officer of the Commonwealth, we do not deem it our duty, or this court's duty, to pass upon the sufficiency of the testimony on this point, as the jury has passed upon that as upon any other question of fact, and have said by their verdict that the appellant was not insane or of unsound mind. However, we desire to ask the court, in order that no injustice may be done, to carefully read the entire testimony in this case upon the question of insanity.

2. The first error relied on by counsel is the reading of certain letters found on appellant when he was arrested by the police. The motive for this killing was either jealousy or the appellant desired to rid himself of this unfortunate girl.

Appellant says that Miss Watkins gave him the letters of Gregson every time one came to her. They were read to appellant at the trial and he recognized them as the same letters he had gotten from Miss Watkins. Then it is shown that said letters were considered read in evidence to the jury.

(a) It is the contention of the State that these letters were properly identified and were competent to show appellant's knowledge of the relation of said Gregson and Miss Watkins, and this knowledge was what aroused the jealousy of appellant and furnished the motive for this crime. (O'Brien v. Commonwealth, 89 Ky., 354; Brewer v. Commonwealth, 10 Ky. Law Rep., 122.)

3. It is contended by counsel that instructions 6, 7 and 8 do not define the law upon a plea of insanity. We must confess to the court that we have some doubt on this question ourselves.

The courts in this country and in England differ as to the degree of evidence required to uphold this plea; but it seems to be the rule in this State that the preponderance of the testimony should show the insanity of the accused before the jury is authorized to acquit on this plea. Instruction 6 properly defined the law under said rule.

4. It was not error to instruct the jury that the law presumed the accused sane. (Abbott v. Commonwealth, 21 Ky. Law Rep., 1374.)

5. On the question of admission and rejection of evidence of insanity, both before and after the commission of the offense, we do not believe that the substantial rights of the accused were prejudiced thereby, nor by the rulings of the lower court.

AUTHORITIES CITED.

O'Brien v. Commonwealth, 89 Ky., 354; Brewer v. Common-

wealth, 10 Ky. Law Rep., 122; Moore v. Commonwealth, 92 Ky., 636; Abbott v. Commonwealth, 21 Ky. Law Rep., 1374.

OPINION BY JUDGE BARKER—Affirming.

The appellant, Robert Mathley, was indicted by the grand jury of Daviess county, charged wih the murder of Emma Watkins. Upon trial he was found guilty by the jury, and his pnuishment fixed at death. To reverse the judgment based upon this verdict he has appealed to this court.

The facts necessary to illustrate the questions of law arising upon the record are as follows: The appellant, who is a widower, became enamored of Emma Watkins, a girl of 17 or 18 years of age. According to the evidence, for a time, at least, they were engaged to be married, and perhaps (although this was not material) there had been illicit relations between them. It is further shown that he was exceedingly desirous of marrying the girl, and was probably jealous of her. Deceased had been employed in the home of appellant, who was keeping house with his mother, but at the time of the killing she was not in his service, but was visiting the house of William Warren, where the tragedy took place. On the 26th day of June, 1904, the appellant, Emma Watkins, James Gregson, Mrs. William Warren and William Warren, were all at the house of the latter in Owensboro, Ky. James Gregson was showing some attention to Emma Watkins, but after a short while he and William Warren left the house, taking opposite directions. Appellant, after the departure of Gregson and Warren, sought to obtain the promise of the girl to marry him, but this she refused to give, saying, in substance, that she had loved him at one time, but since he had threatened to shoot her she no longer loved him. Without giving in detail their

conversation, appellant said to the girl she might as well marry him, as she should not marry any one else. After being absent a short while, James Gregson returned to the house, whereupon the appellant, without any warning or apparent cause, drew a revolver, and fired two shots, one mortally wounding James Gregson, and the other killing Emma Watkins. Gregson ran out of the house, and fell in the street. The girl ran into the kitchen, and there fell dead. Appellant, pistol in hand, sat down on the kitchen floor beside the dead body of his victim, where he remained until arrested and disarmed by the police officers.

The theory of the Commonwealth is that the killing was the result of jealousy; that of the defense that it was caused by insanity. Among the grounds for reversal it is urged that the court erred in admitting one of the witnesses (a physician) to testify that he was consulted professionally by Emma Watkins some time before her death, and that in response to a direct question from him she said she was pregnant, and had been so for three months. This is objected to as hearsay, and, admitting for the purposes of the case that it is justly subject to that criticism, it was not prejudicial to the substantial rights of appellant, for the reason that Mrs. William Warren had already testified, without objection, that the girl had made the same statement to her. Some time before her death, Will Gregson, a brother of ʼames, while confined in jail, wrote several letters to Emma Watkins, which show that he was also in love with her, and that he claimed to have had illicit relations with her. These letters were taken from the possession of appellant at the time of his arrest. He admitted they were given him by Emma Watkins as they were received, and that he knew their

contents. As these letters tend to establish a cause for jealousy on his part, and thus furnish a motive for the killing, they were clearly admissible in evidence.

Instructions Nos. 7 and 8, which are complained of, are as follows:

"No. 7. The court further instructs the jury that the law presumes every man sane until the contrary is shown by the evidence, and before the defendant can be excused on the grounds of insanity the jury must believe from the evidence that the defendant at the time of the killing was without sufficient reason to know what he was doing, or that, as the result of mental unsoundness, he had not then sufficient will power to govern his action by reason of some insane impulse which he could not resist or control.

"No. 8. The court further instructs the jury that, although they may believe from the evidence that the defendant at the time of the killing of Emma Watkins was without sufficient power to govern his action by reason of some impulse which he could not resist or control, yet if they further believe from the evidence that such lack of reason to know right from wrong, or such insufficient will power to govern his actions or to control his impulses, arose alone from voluntary drunkenness, but not from unsoundness of mind, they should not acquit the defendant on the grounds of insanity."

Instruction No. 7 is objected to because it places the burden of proving his own insanity upon the accused. This instruction is approved in Abbot v. Commonwealth, 107 Ky., 624, 21 Ky. Law Rep., 1372, 55 S. W., 196; Ball v. Commonwealth, 81 Ky., 662, 5 Ky. Law Rep., 787; Brown v. Commonwealth, 14 Bush, 400, and Wright v. Commonwealth, 72 S. W., 340,

24 Ky. Law Rep., 1838, and must now be considered as affording when applicable, the correct rule.

Instruction No. 8 is criticised because it is said that it takes from the jury the right to find the defendant insane, although his mind may have been so diseased by long drunkenness as to deprive him of the power of knowing right from wrong, or of will power sufficient to govern his actions, provided this condition was superinduced alone from voluntary drunkenness. If the inference which counsel draw from the language of the instruction in question is correct, their objection to it is well founded; but an analysis of it shows that it clearly distinguishes between the lack of reason or will power arising from voluntary drunkenness and the want of these mental powers arising from unsoundness of mind. The instruction tells the jury plainly that, if appellant's lack of reason or will power arose alone from voluntary drunkenness, but not from unsoundness of mind, they should not acquit him on the grounds of insanity. This instruction is copied from one approved by this court in Wright v. Commonwealth, supra, and we adhere to it as a sound exposition of the law on the subject of which it treats.

Appellant further complains that the court failed to expressly instruct the jury as to the presumption of innocence. Assuming that ordinarily this instruction is necessary and proper, the rights of appellant were not injured by its absence in this case.

Here there is no dispute as to the homicide having been committed by appellant without legal excuse or justification. That he shot the girl dead without provocation is admitted. His only defense is insanity, and as to this we have seen that the rule is well settled in this State that one charged with crime is presumed to be sane until the reverse is established by evidence.

There are other errors assigned, but we do not think them of sufficient merit to require special notice. The instructions of the court, except as herein set forth, are not criticised, and they properly state the law of the case. As was stated frankly by counsel in the argument at bar, this homicide was either one of atrocious and brutal murder or the appellant was insane. His insanity, therefore, was the one real, substantial question in the case. There was evidence both for and against him on this proposition, and the jury, who were the final arbiters as to the facts, found this issue against him. A careful reading of the record convinces us that appellant had a fair and impartial trial at the hands of both the court and jury, and that his defense was fully presented by the able and loyal counsel appointed for him is abundantly shown both in the record and the argument at bar.

Perceiving no substantial error in the record, the judgment is affirmed.