## Commonwealth *v.* Knox, Appellant.

*Criminal law—Criminal procedure—Murder—Murder of the first degree—Instructions to the jury.*

Where on the trial of an indictment for murder, the Commonwealth's evidence showed that after defendant had been teasing deceased, in consequence of which deceased was provoked and struck defendant, knocking him down, defendant left the room and came back with a gun which he fired at deceased, causing a wound which resulted in his death; and defendant testified that the gun went off accidentally while he was engaged in a scuffle with a third person, the court properly charged the jury in effect that intent to take life might be inferred from the intentional use of a deadly weapon by one person against the body of another, and a verdict of guilty of murder of the first degree and sentence of death were affirmed.

Argued Oct. 3, 1918. Appeal, No. 98, Oct. T., 1918, by defendant, from the judgment and sentence of O. & T., Armstrong Co., Dec. Ses., 1917, No. 1, on verdict of guilty of murder of the first degree, in case of Commonwealth of Pennsylvania v. Luther Knox. Before BROWN, C. J., STEWART, WALLING, SIMPSON and FOX, JJ. Affirmed.

Indictment for murder. Before KING, P. J., who in his charge stated the facts as follows:

From the evidence offered on the part of the Commonwealth it appeared that the defendant, Luther Knox, on the night of November 1, 1917, between the hours of nine and ten o'clock went to the shanty known as No. 9 in the Borough of Ford City, where he and George Suggs, George Scott and Will Stewart had been living. When the defendant arrived, Suggs, Scott and Stewart were in the shanty and the door was fastened on the inside. The defendant knocked at the door and after some words, the door was opened by Suggs and the defendant entered. The defendant and George Suggs had some

words about profane language that was used by the defendant in relation to the door not being unlocked or opened as quickly as the defendant thought it should have been when he first came to the door. The defendant continued teasing Suggs, although told to stop, until finally Suggs got out of his bunk and struck him and knocked him down. The defendant then went out and the door was fastened on the inside. In from three to five minutes afterwards the defendant returned and requested that the door be opened. After a little while the door was opened and it was discovered that defendant had a double barreled shot gun. The gun was discharged and the shot struck Suggs about the right shoulder and the right side of the neck while he was in his bunk. A second shot penetrated the bed clothing on the bunk from which Suggs had removed after the first shot. The evidence on the part of the Commonwealth further showed that Scott ten or fifteen minutes later had a scuffle with the defendant and in that scuffle succeeded in taking the gun away from him. The defendant then went away from the place of the shooting and later on that night he was arrested. He testified that he had bought the gun for hunting purposes, and that the gun went off accidentally, at the time of the shooting in the scuffle with Scott who had grabbed the gun, and that both barrels of the shot gun must have gone off at the same time.

The jury returned a verdict of guilty of murder in the first degree, upon which sentence of death by electrocution was passed. Defendant appealed.

*Errors assigned* were to the charge of the trial judge and in particular the parts as follows:

[3] "The intent to kill can be found from the acts and declarations and the conduct of the slayer at or just immediately before the commission of the offense, and the character of the weapon used, and the part of the body on which the wound was inflicted. One who uses, upon the person of another at some vital point of the body,

with a manifest intention to use it, a deadly weapon such as a gun, must, in the absence of qualifying facts, be presumed to intend the death of that person, which is the ordinary result or consequence of the use of discharging of such a weapon upon the body of another."

[4] "If you should find, from all the evidence, that there was no intention to kill, or that no intention to kill can be reasonably inferred from all the evidence in this case, then the killing would be murder in the second degree."

[5] "The Commonwealth contends that in view of the preparation of the gun, the entire absence of provocation at the time of inflicting the wound, the deadly nature of the weapon, and the vital part of the body at which it was aimed, all tend to prove that the killing was wilful, that there was time to deliberate, that the blow was premeditated, that there was no sufficient ground of provocation and no rage or passion. That is the contention of the Commonwealth, and if you find it to be true, it would constitute murder of the first degree. But on the other hand, the contention of the defendant is that the weapon was not procured or prepared for the purpose of killing the deceased. The defendant says that he had it for an innocent purpose, that he got it for hunting purposes. You will recollect that testimony. Of course if you believe that testimony, if you believe that he fired the shot without a wilful purpose and without the intention of killing, that would constitute murder in the second degree."

[6] "When a man uses a gun loaded with powder and shot and aimed at a vital part of the body of another and discharges it, he must be presumed to know that death is likely to follow."

[7] "If you believe the testimony of the defendant, that the gun was discharged in a tussle or scuffle between himself and George Scott in some unaccountable way, and that the shot was accidental and without intention, on his part, and that the shot accidentally and without intention on his part struck the body of Suggs, from the

effects of which he afterwards died, then you should acquit the defendant, that is, your verdict should be that of not guilty."

[8] "Now, gentlemen, as I have stated to you, it is a well-settled doctrine of our criminal law that in order to find a defendant guilty in any criminal case the jury must be convinced by the evidence beyond a reasonable doubt that he is guilty of the offense charged against him. If the jury entertained a reasonable doubt as to which of the two degrees of the crime charged in this indictment the defendant is guilty, that is, whether of murder in the first degree, or murder in the second degree, the defendant is entitled to the benefit of that doubt, and can only be convicted of the lower degree, that is of murder in the second degree. This reasonable doubt, gentlemen, must be a doubt rising out of the evidence, out of a consideration of all the evidence. It must not be a fanciful doubt raised up in your mind simply to enable you to escape an unpleasant duty. But it must be a doubt that is founded upon reason and arising out of the evidence. If you have such a doubt, after hearing all the evidence and considering it carefully, then the defendant is entitled to the benefit of that reasonable doubt, and you would have to acquit him."

[9] The ninth assignment was to the general charge to the jury.

*Harry C. Golden,* with him *E. O. Golden,* for appellant.

*Clarence O. Morris,* for appellee.

PER CURIAM, October 23, 1918:

Nothing is to be found in the third, fourth, fifth, sixth, seventh, eighth and ninth assignments, alleging error in the charge of the trial judge, that would justify a reversal of the judgment and the granting of a new trial. All of the assignments are, therefore, overruled and the judgment is affirmed, with direction that the record be remitted for the purpose of execution.