No. 15,525.

WRIGHT *v*. THE PEOPLE.
(171 P. [2d] 990)

Decided August 5, 1946.

Mr. ISAAC MELLMAN, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

DEFENDANT below was convicted of murder in the first degree and his punishment fixed at death. His assignments of error are grouped under eight points.

The first assignment is that the verdict is contrary to the evidence in that there is no disclosure of malice, premeditation or deliberation; the second, that the corpus delicti was not proven by competent evidence; the sixth that there was error in instructing on first degree murder because there was no evidence to justify such instruction, and the seventh that there was error in instructing on second degree murder because there was no evidence to justify such instruction. These four objections all go to the sufficiency of the evidence.

By defendant's own testimony it appears that he and Alberta, the deceased, had lived together as husband and wife for a number of years. For some months defendant's father lived with them and occupied their bedroom while they slept on the porch. Defendant spent his earnings gambling and Alberta objected to it. In June, 1943, defendant found a package of affectionately-worded letters which she had received from a man friend in the armed service, and blacked her eyes, and in September, without telling him of her intentions, she left him and went to Texas, taking a number of articles, some of which he claimed were his, and leaving a note saying she was sorry to have to do it. Later there was correspondence between them and there appeared to be progress in patching up their affairs. On November 7, 1943, he learned that she was back in Denver at a friend's house and went over to see her, but she re-

pulsed his advances. The next morning he secretly took a gun and some cartridges from his employer's desk, went home and loaded the gun and it went off accidentally while he was experimenting with it in his room. Then he put the gun down in his trousers under his belt and went to the home where Alberta was staying. Finding that she had gone to a funeral he went in her room, ransacked her trunk and bureau, broke a jar and took from it her money, together with some insurance policies, and wrote a note, which after her death he tore up and threw in the toilet bowl. The rescued portion of this note said, "her to the last. I will tell all later." Upon Alberta's return home she saw he had the pistol and cried out to a friend, Mrs. Datts, who roomed upstairs, to call the police; then she tried to hold defendant's arms but let go when Mrs. Datts came down and the three of them talked together briefly, whereafter Alberta went in the bathroom and defendant followed immediately behind her and bolted the door. Before they entered the bathroom he took the pistol out and held it in his hand. Then, according to his testimony at the trial, she started running towards him in the bathroom, he stepped back and struck against the wall and the pistol went off, shooting her through the heart.

Captain of Detectives Childers testified to three different statements, all inconsistent with his testimony at the trial, made by defendant when questioned at different times regarding the shooting.

Three witnesses testified to defendant's threats shortly before the shooting, that he was going to kill Alberta, and his aunt-in-law testified that he told her, "Aunt Anne, I am not going to promise you that I am not going to do anything to her"; that he showed her the letters that Alberta had received from her soldier friend and said, "I am going to read them over and over again to harden my heart against her."

The question of the sufficiency of the evidence was for the jury and that evidence as hereinabove

briefly summarized, if believed by the jury, established sufficiently the existence of a criminal agency as the cause of death, and supported inference and finding of malice, premeditation and deliberation so as to justify and require the giving of instructions on both second and first degree murder.

██ The third assignment predicated error on admitting Exhibit N, the packet of some fifty letters which deceased had received from her friend in the military service, as representing only one side of correspondence between deceased and a third person, and as being hearsay and too remote to establish motive. While defendant found the letters in June, his own testimony was that after he found the letters he left them with a friend for safe keeping until after Alberta went away in September, and that he then took the letters over to his aunt and read some of them to her. The aunt testified that when she urged him to destroy them, he declared his intention to read them over and over. Only six of them were read to the jury by the prosecution and defendant's counsel made no attempt to read others. These letters were filled with terms of endearment. They referred to gifts to the writer from Alberta and to letters received from her, and one of them expressed the writer's hope that some day she would become his wife. The letters which were read tended to establish a cause for jealousy on the part of defendant and thus furnish a motive for the killing. They were not objectionable as being only "one side" of the correspondence; they were not too remote; they were not prejudicial to defendant and they were properly admitted. *Mathley v. Commonwealth,* 120 Ky. 389, 86 S.W. 988.

██ The fourth point urged is that it was error for the court to refuse defendant the right to object to the admission in evidence of Exhibit N in the presence of the jury. If, as we have held, the court properly received Exhibit N, any objection to it was immaterial and not properly for consideration by the jury.

252

■ The fifth point urges error in admitting letters written by deceased to defendant while she was in Texas in September and October prior to her death November 8. Defendant himself supplied the remainder of the correspondence and introduced in evidence the letters he wrote her in reply. These letters were properly received to show existing relations and motive. The extent of the inquiry was largely within the discretion of the trial court, and no abuse of discretion appears.

■ The eighth and last point urged is that there was error in instructing the jury as follows: "The defendant contends that the death of the deceased was by an accident or misadventure, and if you find from the evidence that the death of Alberta Wright was caused by an accident or misfortune, or entertain a reasonable doubt as to whether it was caused by an accident or misfortune as defined by these instructions, you shall find the defendant not guilty." No objection to, or criticism of, this instruction of any sort was made at the time it was given, and, where an instruction has been given by the trial court without objection by defendant's counsel, we should not reverse except for substantial likelihood that the jury may have been misled or confused thereby. Objection is now made on authority of *McRae v. People*, 101 Colo. 155, 71 P. (2d) 1042, that this instruction places the burden of proof on the defendant to establish facts that will justify his acquittal and requires doubt as to his innocence instead of his guilt, and that this constitutes reversible error even in the absence of objection below. The attorney general urges, if this be true, that we reconsider our pronouncement in the McRae case, and we so do.

■ ■ The contention that this instruction erroneously requires doubt as to innocence when it should require doubt as to guilt poses a verbal rather than a real distinction. The jury had three possible alternatives as to the defense of misadventure or accident here instructed on. They might have found death caused by accident; they

might have found death caused by intent, or they might have found doubt as between the two. By this instruction the jury was told that they should find defendant not guilty under either the first or third of these alternatives,—if they found death caused by accident or if they entertained a reasonable doubt as to whether it was caused by an accident. The word "whether" means "which one of two" and indicates that the elements which follow are alternatives. Webster's New International Dictionary, second edition. The doubt instructed on was doubt whether death was caused by accident or by intent. Doubt between the two was doubt as to guilt as well as doubt as to innocence. Doubt as to either was doubt as to the other. It does not require that the jury find from the evidence that the death was caused by accident in order to acquit,—which would shift the burden of proof. The instruction is that if they shall either so find "or entertain a reasonable doubt," they shall find the defendant not guilty. With that alternative clause, it does not shift the burden of proof.

Turning to the cases cited as authority for the opinion in the McRae case, in *Weber v. State,* 2 Okl. Cr. 329, 101 Pac. 355, a conviction for selling intoxicating liquor was reversed because of a similar instruction. *Rushing v. Commonwealth,* 201 Ky. 481, 257 S.W. 15, involved a conviction for possessing an illicit still and there was reversal because of the instruction, "If you have a reasonable doubt from the evidence that defendant is not guilty as charged, you should acquit him"; the court holding that the word "not" should have been omitted. Both the above cases support the pronouncement in the McRae case. In further search we find that in *Ware v. State,* 12 Ala. App. 101, 67 So. 763, a tendered instruction was held properly rejected because it asserts that, if the jury have reasonable doubt of defendant's innocence, they must acquit him; whereas the law is, if they have a reasonable doubt of his guilt, they must acquit him.

We believe all the other cases cited in the McRae case are distinguishable as to the question involved. In *Zipperian v. People,* 33 Colo. 134, 79 Pac. 1018, the instruction as to self-defense said, "it must appear to the reasonable satisfaction of the jury" that the defendant had cause to believe himself in danger. There was no alternative of reasonable doubt in that instruction and we reversed, saying it was sufficient if the defendant succeeded in raising a reasonable doubt. In *Boykin v. People,* 22 Colo. 496, 45 Pac. 419, the jury was instructed that to justify the accused in the killing in self-defense, the jury must be satisfied from the testimony that the defendant had reasonable ground to fear. Again, there was no alternative of reasonable doubt in the instruction and we said again that the defendant is not required to satisfy the jury but merely to raise a reasonable doubt. In *McNamara v. People,* 24 Colo. 61, 48 Pac. 541, the jury was told that if they believed from the evidence that an alibi had been established they should find the defendant not guilty and that the burden was on the defendant to make out his defense as to an alibi. By that instruction not only was the alternative of reasonable doubt excluded, but the burden of proof was explicity placed on defendant. In *Drossos v. United States,* 2 F. (2d) 538, the instruction required that the jury be convinced of the innocence of defendant's relations without any alternative of reasonable doubt and the instruction was held to shift the burden of proof.

Two other Colorado cases seem pertinent. In *Cook v. People,* 60 Colo. 263, 153 Pac. 214, the jury was instructed in substance that voluntary intoxication as a rule was no excuse for crime, still "if proven" it should be considered by them, and that if from all the evidence they had any reasonable doubt as to his being so intoxicated as to render him incapable of forming a deliberate intention they must acquit. The jury was further instructed that an alibi was a legitimate defense "if proven" and if upon the whole case they had a reason-

able doubt as to whether defendant was in some other place when the murder was committed they should not find him guilty. Complaint was made that using the phrase "if proven" shifted the burden of proof, whereas if the evidence raised a reasonable doubt regarding either of those defenses defendant was entitled to an acquittal, but such objection was overruled and the instructions were held proper by this court.

In *Agnes v. People,* 104 Colo. 527, 93 P. (2d) 891, the jury was instructed, "If upon the whole case you believe that the defendant acted in necessary self-defense, or if upon the whole case you have a reasonable doubt whether the defendant acted in necessary self-defense, you should find him not guilty." That instruction was brought to the attention of this court and quoted in the opinion, but there was no consideration of it as being prejudicial. True, no objection was made to it in that case, but the McRae case was there relied on and discussed in the opinion. Neither was any objection made to the similar instruction now under consideration in the trial court where objection should be made.

*Johnson v. State,* 29 Tex. App. 150, 15 S.W. 647, is one of the authorities relied on here and in the McRae case, supra. The Texas court had occasion to consider the ruling of that case subsequently in *Regittano v. State,* 96 Tex. Cr. 477, 257 S.W. 906, wherein it was noted that the authorities were not harmonious, and *Powell v. State,* 28 Tex. App. 393, 13 S.W. 599, and the Johnson case were mentioned particularly as apparently supporting different positions. In the Johnson case there was reversal because the instruction required the jury to "believe from the evidence" the existence of the conditions which would entitle him to acquittal. In the Powell case reversal was denied on a similar instruction because in that case the court charged the rule of reasonable doubt generally, making it applicable to the whole case. In the subsequent Regittano case the court said: "The law requiring a charge on the presumption of in-

nocence and reasonable doubt is generally satisfied when the doctrine is applied by a charge referring to the whole case; that is, referring to the general issue of guilty or not guilty. * * * It has been held that it is not required that it shall be charged in every case with regard to each affirmative · independent offense. * * * It is believed, however, that where, as in the instant case, the defensive theory is an affirmative one, that is, where the connection of the accused with the homicide is conceded and justified by affirmative testimony given by the accused, when the matter is properly presented in the trial court, there should be embodied in the charge submitting his defense the information to the jury that *if they believe the affirmative defensive facts or have a reasonable doubt of their truth* [emphasis ours], an acquittal should result. This we understand to be the rule applied in Johnson's Case, supra, and followed in many others to which we have adverted." That rule has been followed in numerous Texas cases, including *Scott v. State,* 46 Tex. Cr. 536, 81 S.W. 294, where the court instructed the jury, "If you believe from the evidence, * * * that such shooting was accidental, and not intentional upon the part of defendant, then and in that event the homicide is excusable, and if you so·believe from the evidence, or if you have a reasonable doubt thereof, then you will find defendant not guilty." This charge was held correct.

In *McCutcheon v. State,* 199 Ind. 247, 155 N.E. 544, the jury was instructed, "If you have a reasonable doubt of the guilt of the defendant as to the degrees of felonious homicide, you can only find him guilty of such degree as you have no reasonable doubt of his innocence," and the defendant predicated reversible error on the failure of the court to use the word "guilt" instead of "innocence" as the final word of the instruction. In denying this contention, the court said: "The sentence is awkwardly worded, but it cannot be held to have

misled the jury because a subsequent instruction correctly instructed the jury * * *."

In *People v. Seiler,* 57 Cal. App. 195, 207 Pac. 396, the jury was instructed, "If you are convinced to a moral certainty and beyond a reasonable doubt that he was not at the time in question guilty of negligence * *. *. and was exercising reasonable care and circumspection and caution in the operation of the automobile, and that he was not under the influence of intoxicating liquor, you will, of course, return a verdict of not guilty." The appellate court, admitting that the instruction standing alone was not correct, refused to reverse the conviction because of subsequent instruction to the effect that if the jury entertained a reasonable doubt as to whether he was guilty of negligence or was under the influence of intoxicating liquor, they should give him the benefit of such reasonable doubt and return a verdict of not guilty.

In *Commonwealth v. Knox,* 262 Pa. 428, 105 Atl. 634, objection was made to the charge, "If you believe the testimony of the defendant, that the gun was discharged in a tussle or scuffle between himself and George Scott in some unaccountable way, and that the shot was accidental and without intention, on his part, * * * then you should acquit the defendant, * * *." This was held not reversible error for the reason that the law of reasonable doubt was included in another instruction, and conviction was affirmed.

In *Lloyd v. State,* 206 Ind. 359, 189 N.E. 406, the jury was instructed, "Of course if you find that defendant at the time and place in question did not intend to kill or injure anyone and that Albert Klinger lost his life by a pure accident, you should acquit the defendant." They were elsewhere instructed as to presumption of innocence and burden of proof and this instruction was held sufficient on accidental shooting. Instruction to the same effect in *State v. Wisdom,* 84 Mo. 177, was held favorable to defendant and similar instructions were

approved in *Blanton v. Commonwealth* (Ky. App.), 112 S.W. 594; *State v. Foley,* 220 Mo. 86, 119 S.W. 397, and *Reed v. State,* 75 Neb. 509, 106 N.W. 649; note also instructions in similar form approved, 3 Randall's Instructions to Juries, instruction 2925 (2), (3); instruction 2926 (2), (4), (5); instruction 2927 (1), (2), under "Accidental Homicide or Homicide by Misadventure"; also 2 Brickwood Sackett Instructions 873, instruction No. 2972 (a) and (b); also vol. 2, Blashfield's Instructions (2d ed.), "Excusable and Justifiable Homicide," instructions numbered 3832, 3836, 3837 and 3838. These forms are frequently and properly consulted in the trial of cases and we should not depart from such a widely recognized rule without strong conviction of error therein.

If the jury could have been confused by this instruction taken alone, any uncertainty therein was cured by Instruction No. 3, which advised the jury as to the presumption of innocence until overthrown by evidence sufficient to exclude a reasonable doubt of defendant's guilt and of the burden upon the people of establishing guilt beyond a reasonable doubt; and by Instruction No. 4 that the jury was not to find the defendant guilty if they entertained a reasonable doubt of his guilt, and by Instruction No. 5, which again told the jury that the defendant was clothed with a presumption of innocence, which stands as evidence in his favor, and that this presumption remains until the state by its proof shows him to be guilty beyond a reasonable doubt; that the burden of furnishing such proof is with the prosecution throughout the trial, and never shifts, and that if the evidence or any material part thereof is fairly susceptible of two constructions, one in favor of the state and the other in favor of the defendant, the doubt must be resolved in behalf of the innocence of the accused, as every intendment or inference under the evidence, considered in its entirety, must be construed in defendant's favor.

However, we are inclined not to rest our decision

upon the sufficiency of the other instructions in this case nor upon lack of objection below. The opinion in the McRae case was a considered and scholarly opinion, but upon further and careful review of the authorities we believe our pronouncement as to the instruction in that case was not in line with the better authorities, that in the instant case the jury could not have been misled or confused by the similar instruction under consideration and that further to adhere to the rule of the McRae case would add unreasoned confusion in the law and needlessly increase the likelihood of error on the part of trial judges in future cases. Accordingly, we conclude that there was no error in the instruction here complained of.

In usual course, our conclusion would lead to affirmance of this judgment. But other grave and unusual considerations challenge us. At the time of the trial of this cause, the giving of a like instruction as here given had been held reversible error and that ruling then stood as the law; a human life is here at stake; the defendant is a member of a minority race, as to whom there must be no room for inference of discrimination and no doubt of even-handed justice. Confidence as well as logic must buttress the court. That this may be assured in such a case, involving so grave a penalty, the judgment is reversed and the case remanded for retrial.

Mr. Justice Hilliard and Mr. Justice Bakke concur in the result.

Mr. Justice Hilliard, concurring in the order for reversal of the judgment, but dissenting, nevertheless, from a portion of the opinion.

While I shall not pause to review the point extendedly, I regard the conclusion of the court to overrule *McRae v. People,* 101 Colo. 155, 71 P. (2d) 1042, as retrogressive. The doctrine of that case, I believe, was

bottomed upon, and logically and properly deduced from, our earlier decisions, several of which we there cited and reviewed. Not only so, but, as the author of the majority opinion here concedes, the McRae opinion, while not in harmony with majority holdings in some jurisdictions, the court's "count" accepted, does, nevertheless, enjoy support in others. In that connection, as my study convinces, the cases which appear to hold contrary to the McRae opinion, generally are distinguishable in that they are based on statutory enactments or on earlier court decisions in the several states of their origin, decisions that are contrary to our earlier pronouncements, and on which the McRae opinion rests. The overall question in the McRae case had to do, as does the point in investigation here, with the burden of proof. The effect of the instruction there, and here, required defendant to sustain the burden of showing that the homicide involved was the result of an accident or misadventure, in support of which there was evidence in both cases. Our theory in the McRae case, and I still think it announced a sound and wholesome rule of procedure, was that "It is not incumbent upon the defendant in a criminal case, either by his own evidence or that of the people, or both combined, to prove anything to the satisfaction of the jury. It is sufficient * * * if the defendant, by any evidence in the case, succeeds in raising a reasonable doubt in the minds of the jury of the truth of any essential element of the charge made against him." *Zipperian v. People,* 33 Colo. 134, 79 Pac. 1018. "The defense that the homicide was accidental is not considered as an affirmative defense, but as a denial of criminal intent, placing the burden of proving such intent on the prosecution." 40 C.J.S., Homicide, p. 1097, §196. For exhaustive discussion, see, *State v. Hazlet,* 16 N.D. 426, 113 N.W. 374. "The defense that the killing was accidental is not of the affirmative type which threw upon defendant the burden of proving it, either by preponderance of evidence or otherwise; such a de-

fense, instead of admitting the intentional act charged in the indictment, directly challenges and controverts it." *Commonwealth v. Kluska*, 333 Pa. 65, 3 A. (2d) 398.

I think the inquiry should have been resolved·in the light of the McRae case, and the judgment reversed on the authority thereof; but, since the court has concluded otherwise in relation to that case, I record my dissent to that portion of the opinion. For the reasons stated in the closing portion thereof, however, I concur in the order reversing the judgment below, and for a new trial.