[No. 7221.]

## JAMISON V. THE PEOPLE.

1. CRIMINAL LAW —*Evidence—Dying Declarations*—The declaration of a deceased person that he has been "murdered" is the expression of a mere opinion, and is therefore inadmissible to establish the degree of the homicide—(14).

2. PRACTICE IN THE SUPREME COURT—*Error Presumed Injurious*—The admission of incompetent evidence which may have influenced the jury as to the degree of the crime, is fatal—(14).

*Error to Pueblo District Court.*—HON. C. S. ESSEX, Judge.

Mr. D. M. CAMPBELL, and Mr. W. J. KERR for plaintiff in error.

Hon. BENJAMIN GRIFFITH, attorney general, and Mr. GEORGE D. TALBOT for the people.

Mr. JUSTICE MUSSER delivered the opinion of the court:

Henry Jamison, the plaintiff in error, was convicted of murder in the second degree and has brought the matter here for review. The shooting, which resulted in the death of Henry Smith, took place in a hall of a rooming-house operated by Jamison and his wife. Smith and two others were in a room in this house when Jamison came into the room and inquired for his wife. Upon observing Smith, Jamison said to him that he, Jamison, wanted Smith to get out of the house. Smith and Jamison went out into the hall, and shortly thereafter the shooting occurred. The circumstances under which the shooting took place in the hall were not shown, except by the evidence of Jamison. He testified that in the hall he ordered Smith to leave the house, and let Mrs. Jamison alone; that an altercation then took place in which Smith, as aggressor, struck Jamison first with a beer bottle, and then with his fist; that Jamison fired two shots at Smith in order to protect himself from Smith's assault. In part, this evidence was corroborated by Mrs. Jamison, who happened to come out into the hall for an instant while the two men were there. Bradley, a witness for the people, testified that prior to the firing of the shots, he was near the rooming-house and heard the shots, and he walked around and saw Smith coming down the back stairway, and met him there. Over objection, the following testimony was then admitted:

"Q. Did he say anything as to whether or not he was shot? A. Yes, sir."

The court then instructed the witness that he might state anything that Smith said about his own condition at that time. He was then asked the question:

"Q. He said he was shot, did he? A. He said he was murdered."

He was then asked:

"Q. You say he said he was murdered? A. Yes, sir. Q. What else did he say about his condition?" And the witness did not testify further what was said.

From the stairway, Smith proceeded to the sidewalk and there fell. The evidence is ample and undisputed that while Smith was lying upon the walk he felt and knew that he would die, and that in the full realization that death was imminent he stated that Jamison had shot him. Under these circumstances, there can be no doubt that the statement was admissible as a dying declaration. Even if this were not so, the admission of the statement was without prejudice to the defendant, for the defendant himself testified that he had shot Smith. That fact was not disputed. It is the statement made by Smith to Bradley, that he, Smith, was murdered, which gives us the most concern, and of which the plaintiff in error complains as being a conclusion or the expression of an opinion, which, when admitted, tended to fix the degree of the homicide. The only justification that seems to be urged by the people for the admission of this statement is that it was a dying declaration. The evidence does not show that the deceased made that statement to Bradley with a sense of impending death. It was afterwards—on the walk—that Smith's statement showed that he had that sense of impending death necessary for the admission of dying declarations. Even if it be contended that it was admissible as a dying declaration, because in itself it indicated that Smith thought he was going to die, or that because a few minutes later Smith fully realized that he was going to die, it would be clearly inadmissible, because it was an expression of an opinion or a conclusion. A dying declaration must relate to facts and not to mere matters of opinion or conclusions of the declarant, and so much thereof as does not come within

this rule is incompetent.—*State v. Perigo*, 80 Ia. 37; *State v. Baldwin*, 79 Ia. 720.

The court seems to have admitted this statement for the purpose of showing Smith's condition at the time of its utterance. It cannot be said that the statement was made to describe the condition of the declarant and not to express his opinion of the circumstances under which he was shot. What need was there for the people to show Smith's condition at that time? It was certainly not necessary in order to lay a foundation for a dying declaration, for subsequently ample statements were made by Smith, not of the character of this one, to show what he thought his condition was relative to the imminence of death and to lay the foundation for a dying declaration, and his statement then was that Jamison had shot him and not that Jamison had murdered him. It is not necessary to admit Smith's statement, that he had been murdered, in order to show who perpetrated the homicide. From a view of all the evidence in the case, the only use that the people had for this statement was to show the degree of the homicide, and it can not be said that it did not have that effect. It was not competent for that purpose, for it was but a conclusion or an opinion. The degree of the homicide must be established by competent testimony as well as any other fact. It may be that the jury seized upon this statement of Smith, that he had been murdered, to fix the degree, when, without it, they might have rendered a verdict more favorable to the defendant.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE GABBERT and Mr. JUSTICE GARRIGUES concur.