No. 14,471.

AGNES *v.* THE PEOPLE.

(93 P. [2d] 891)

Decided June 26, 1939. Rehearing denied September 11, 1939.

528

Mr. William A. Black, Mr. Henley A. Calvert, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Henry E. Lutz, Assistant for the people.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

PLAINTIFF in error, defendant below, was charged with murder in the first degree for the killing of his common-law wife. A trial resulted in his conviction and imposition of the death sentence. The homicide was committed November 20, 1937, at about 8 o'clock a.m.

Briefly, the facts are: That prior to the time of the homicide defendant had lived with his wife for approximately two years. For about four months of this period they had resided with decedent's mother and brother at 344 Steele street, in Denver, and until about November 12, 1937. On the evening of that day, defendant, arriving at their home, expressed dissatisfaction with the meal there prepared and urged his wife to accompany him to Five Points to secure something to eat. Deceased, in a conversation with her mother at that time, in the presence of defendant, said to her, ''Angelo is going to take me over to Five Points to beat me up,'' at which statement defendant smiled, but said nothing. The mother told defendant at that time that if he went out of the house that night, not to return. The wife then remarked, ''Well, if that is the case I will just stay home until we get it straight.'' Defendant then said, ''All right, I will pick up the clothes and I will leave until you get it straight.'' He then took his wife's clothing and left, but returned it the next day, although he ceased to live with the family thereafter. From that time until November 20 he was seen in the neighborhood practically daily, and there occurred several telephone calls and conversations between him and his wife, her brother Roy Finley and Betty Plunkett, his wife's daughter aged thirteen. Exactly what transpired in those conversations is in dispute. Defendant claims that Finley told him not to come around again, saying, ''The first time I see you if you haven't got no gun you better get one.'' Following that conversation defendant pawned his overcoat and purchased a gun. This was several days before November 20. Betty Plunkett testified to a conversation with defendant several days prior to November 20, during which she says he stated, among

other things, that "she [his wife] better be here at 2 o'clock or I will blow the whole family up." This statement was denied by defendant. After November 12 defendant was residing at 2523 Welton street, several miles from where his wife was living. On the morning of November 20 defendant left his home at about the hour of 7:15 a.m., boarded a streetcar and, as he claims, at his wife's previous invitation to meet him there, went into the garage used by his wife and her brother on Steele street. Shortly after 8 o'clock a.m., deceased and her brother entered the garage. There were two motor vehicles located therein, a truck and a Nash sedan. Deceased entered first and took a seat in the Nash car, and her brother went around on the other side of said car to sit in the driver's seat, when defendant arose from the body of the truck. The evidence as to what happened in the garage thereafter is conflicting. Finley and defendant remained as the sole living eye-witnesses. Finley testified that all doors were closed when he entered; that when he started to get into the driver's seat he "heard a scrambling in the truck"; that "defendant popped up with a gun in his hand" and then jumped down; that deceased got out of the car on her side and defendant started shooting at her; that thereafter he ran and defendant followed him to the door of the garage and shot at him twice; that immediately after he got in the house he called the police; that while he was in the garage he heard three or four shots fired. Defendant testified that he jumped up when Finley came into the garage; that Finley had a gun in his hand and pointed it at him, and at that time he got behind deceased; that it looked as though Finley was going to start shooting at him, so defendant started shooting; that every time Finley made a motion with his gun, defendant would shoot, and that under those circumstances he shot the deceased; that finally Finley began to run, and defendant then ran after him and shot at him again. Testifying further, he says that thereafter he went back to the garage and told his

wife he didn't mean to shoot her; asked her whether she was seriously hurt, and that she replied she did not know; that he then told her he was going to run and hide out. Finley, in his testimony, denied having a gun at the garage. He also denied that he ever told defendant to get a gun, or that he at any time threatened to kill him. Defendant claimed that his wife told him that Finley had a gun, and he admitted that he fired four shots in the garage, and that he fired two shots at Finley as the latter left the garage. He also admitted that Finley did not fire any shots, stating that he had no chance to fire. He further admitted that his gun was fully loaded at the time he started shooting, and that he had eight additional shells, which he later threw away. Within about fifteen minutes after the shooting the police discovered deceased lying in the garage, between the Nash sedan and the wall. A police officer testified that at that time she was still alive, and, without being questioned, said: "Angelo shot me; Angelo did it." November 22 defendant appeared at police headquarters in Denver and surrendered, at which time he made a statement which subsequently was reduced to writing, signed by defendant and admitted in evidence without objection. Four bullets entered the body of deceased, three passing through the trunk and one through the right leg in the region of the knee. She died some time during the same day. Defendant, during his direct examination, testified that in 1932 he was convicted of burglary.

Defendant assigns error on twenty-two grounds, which may be conveniently grouped as follows: (1) Insufficiency of the evidence as applied to first and second degree murder to support a conviction; (2) admission in evidence of the statement of deceased to Cora Finley; (3) error in admission of dying declaration; (4) error in giving Instruction No. 12; (5) error in giving Instruction No. 19; (6) error in refusing to instruct on definition of an assault; (7) illegality of removing defendant to state penitentiary prematurely.

532

The foregoing statement of facts should be a sufficient answer to the first assignment. The evidence fully warranted the jury's verdict of guilty of murder in the first degree.

■ Counsel for defendant contend that the admission in evidence of a statement of deceased to her mother, Cora Finley, was prejudicial error. The statement, as heretofore detailed, was: "Angelo is going to take me over to Five Points to beat me up." The record discloses that this statement was made in the presence of defendant, who, when it was made, merely smiled. No further discussion is necessary to dispose of this assignment of error. It is without merit.

■ Our attention next is directed to the alleged dying statements made by deceased to the police officer approximately fifteen to twenty minutes after the shooting. Without any solicitation or question, deceased stated: "Angelo shot me; Angelo did it." These were statements of a fact, not mere expressions of opinion. Moreover, the fact that "Angelo shot" her and "Angelo did it" was admitted by defendant in a statement made by him shortly after his arrest, as well as in his testimony given at the trial. That he shot the deceased is undisputed. Under such circumstances, the admission of the statements, whether they were dying declarations, res gestae or otherwise, was not prejudicial to defendant. *Jamison v. People*, 52 Colo. 11, 13, 119 Pac. 474; *Reppin v. People*, 95 Colo. 192, 202, 34 P. (2d) 71. Our conclusion makes it unnecessary to consider the cases cited by counsel for the defense in support of this assignment as to dying declarations and res gestae.

■ We come now to the assignment of error based on the giving of Instruction No. 19. This assignment is urged with considerable force and seems to be the primary ground upon which defendant seeks a reversal. The theory of the people was that defendant, in the killing of his wife, did so with deliberation, premeditation and malice aforethought as against her. The theory of the

defense was that the killing was justifiable; that the brother of deceased, Roy Finley, made an assault upon defendant with a gun, in the garage, and that in shooting at Finley, in alleged self-defense, he accidently killed his wife. In this connection, it should be remembered that she was wounded four times. In view of the theory of the defense, it was proper for the court to admit evidence in its support in order that defendant might establish, if he could, that the killing occurred while he was acting lawfully in self-defense. Self-defense became a necessary ingredient of defendant's theory of justification.

To properly understand Instruction No. 19 it is necessary that it be considered with the other instructions given in the case, particularly numbers 17 and 18. These instructions are as follows:

No. 17. "The court instructs the jury that one who, exercising the right of self-defense, discharges a pistol at his adversary but acts without due regard to the presence of others, and unintentionally kills a bystander, is guilty of involuntary manslaughter. But if in exercising his right of self-defense he unintentionally kills a bystander, and if in so doing he acts with due regard to the presence of others, then the death is excusable, and the defendant is not guilty of a crime.

"If you believe in this case that the defendant killed Malinda Plunkett Agnes unintentionally, while exercising his right of self-defense against another assailant, then you may not find the defendant guilty of involuntary manslaughter, unless you believe beyond a reasonable doubt that in causing the death of the deceased the defendant was guilty of a wanton and reckless disregard of her safety, sufficient to constitute criminal negligence."

No. 18. "The court instructs the jury that one of the defenses interposed by the defendant in this case is what is known as self-defense. A homicide is not justifiable on the ground of self-defense unless it is apparently necessary to save the life of the slayer, or to prevent his receiving great bodily harm. The apprehension of no other

danger will either justify or excuse the resorting to so extreme a measure as the taking of life; and in this case, before you are authorized in accepting as a defense the claim of self-defense, made by the defendant, it must appear that the danger to him was imminent, impending, present, not prospective, not even present in the near future; in other words, it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the killing of Roy Finley was absolutely necessary. And it must appear also that Roy Finley was the assailant, or that the slayer had really and in good faith endeavored to decline a further struggle before the mortal shot was fired; it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that he really acted under the influence of those fears, and not in the spirit of revenge. A bare fear on the part of the defendant, however well grounded, that Roy Finley intended to kill him, or do him great bodily harm, will not justify the killing.

"It is not incumbent on the defendant, in order to entitle him to an acquittal on the ground of necessary self-defense, to prove to your satisfaction that he acted in necessary self-defense. If upon the whole case you believe that the defendant acted in necessary self-defense, or if upon the whole case you have a reasonable doubt whether the defendant acted in necessary self-defense, you should find him not guilty."

After giving these instructions to the jury the court gave Instruction No. 19, which reads as follows: "If you believe beyond a reasonable doubt that the defendant in killing Malinda Plunkett Agnes was not acting in self-defense against Roy Finley, the killing was not justified, and you should proceed to determine the degree of his guilt, in accordance with the preceding instructions."

There were no objections made or exceptions reserved to the giving of Instructions 17 and 18. A reading of these three instructions, in the light of the peculiar cir-

cumstances of this case, and considering their context, convinces us that the giving of Instruction No. 19 was not prejudicial error, nor was there anything in its context which would tend to confuse the jury. They had been instructed that if there was any reasonable doubt in their minds as to this matter of self-defense, they must acquit. Moreover, unless the jury believed or entertained a reasonable doubt on the subject they could not properly find that defendant shot in self-defense, and that the killing was justified. While we do not recommend the giving of such an instruction generally, the special circumstances of this case made it proper. The instruction places no burden upon defendant. It does not relate to acquittal, but to one of the main issues raised by defendant in his effort to justify the shooting. Nor was there any assumption in this instruction that defendant committed the crime.

Counsel for defendant rely greatly on the opinion in *McRae v. People,* 101 Colo. 155, 158, 71 P. (2d) 1042, as supporting their contention, but the instruction there given was entirely different from the one here under consideration, and no similar construction is involved in the present case. There the instruction concerned the matter of acquittal; here it relates solely to a necessary ingredient of defendant's defense. We have carefully examined all of the cases cited in *McRae v. People, supra,* and find no similarity whatever in the instructions here involved, and those there under consideration. The trial court, in giving Instruction No. 19 here, committed no prejudicial error.

Further with regard to this instruction, it is asserted that the omission of the phrase, "from the evidence," following the word "believe," constitutes prejudicial error. This omission was not called to the attention of the trial court at the time the instructions were prepared and before they were given to the jury. In view of the number of instructions given which contains this phrase, we cannot say that the omission in this one in-

struction was prejudicial to the defendant. We prefer to assume a higher level of intelligence of the jury personnel than the defense seems willing to concede. Upon this point counsel for defendant cite *Zipperian v. People,* 33 Colo. 134, 79 Pac. 1018, but this case does not per se hold such omission to be prejudicial error. The holding in *Highley v. People,* 65 Colo. 497, 177 Pac. 975, concerning a similar phrase, in view of the circumstances there appearing, is not applicable here. While we do not approve the omission of these words from court instructions, we perceive no prejudicial error, under the circumstances, resulting from their absence in the present case. Section 490, c. 48, '35 C. S. A.

Error has been assigned to the giving of Instruction No. 12. That instruction is similar to Instruction No. 24 given in the case of *Ryan v. People,* 50 Colo. 99, 105, 114 Pac. 306. In that case words were omitted from the instruction, upon which omission error was predicated. This defect does not appear in Instruction No. 12 given in the instant case. Notwithstanding this omission, we said in the Ryan case that the jury could not have been misled by it. The only objection made to Instruction No. 12 by counsel for defendant was that there was no evidence to support the charge of first degree murder. We have heretofore disposed of that objection. Counsel cite the case of *People v. Kowalski,* 332 Ill. 167, 163 N. E. 399, and say that the instruction found to be erroneous in that case is similar to the one here in question. We recognize no similarity. The court there points out that the fallibility in that instruction was that it ignored the plea of self-defense. No such objection was made here. Paraphrasing our opinion in the Ryan case, the foregoing instruction can have but one possible meaning, and that possibility is, that if the shot in question was fired with deliberation and premeditation, with malice aforethought, with intent to kill Finley, but killed Malinda Plunkett Agnes instead, it was immaterial that such deliberation, premeditation and malice were not directed against

Malinda. We recognize no prejudicial error in the giving of this instruction.

■ It is next contended that failure to give a tendered instruction defining "assault" was prejudicial error. Counsel urge that this instruction was necessary in order that the jury might understand that if Finley pointed a gun at defendant that this would constitute an assault, justifying homicide. The weakness of that argument is that such an instruction was not tendered, but only one giving the statutory definition of an assault. If an instruction had been tendered stating that the pointing of a firearm at another amounts to an assault our problem would be different. The trial court, in overruling the motion for a new trial, stated that the word "assault" was used in the instruction as a synonym of the word "attacked." In our opinion, failure to give this instruction did not, under the circumstances, mislead the jury in arriving at its verdict. In fact, we are inclined to believe that the giving of the instruction as tendered might have led to confusion. We find no error in refusal of the court to give it.

■ ■ Counsel contend that defendant was illegally taken to the state penitentiary in violation of his constitutional rights. To support this contention they cite article II, section 16, of the Colorado Constitution, which reads as follows: "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Counsel also cite articles V and VI of the amendments to the federal Constitution. As to those amendments, it has been uniformly held since their adoption that they are not limitations upon the state government but impose limitations upon the federal government only. Section 16, article II, supra, relates to the

right of the defendant to be present at his trial and to be confronted with the witnesses. In the instant case, after sentence and pursuant to section 538, chapter 48, '35 C. S. A., the sheriff delivered defendant to the warden of the penitentiary, "who shall keep such convict in solitary confinement until the infliction of the death penalty." The contention seems to be that anyone charged with a felony must be present at every step in the proceedings or the conviction is invalidated. The only case cited in support of this contention is *Smith v. People,* 8 Colo. 457, 8 Pac. 920. In that case the question was whether a verdict returned in the absence of the defendant was fatal error. There is no contention in the instant case that defendant was not present during all the proceedings, up to and at the time of conviction. No case is cited requiring defendant's presence during proceedings which take place subsequent to his conviction, such as extension of time for stay of execution and motions in arrest of judgment. If we were to take defendant's argument literally, it would mean that no stay of execution could be given or even a motion therefor argued before this court unless defendant were present. Constitutional guaranties protected by section 16 supra, relate to trial and not to proceedings thereafter unless a new trial is granted. Counsel cite chapter 95 of the Session Laws of 1903, page 199, to sustain their contention that the requirement of the law is that defendant remain in the custody of the sheriff of the county in which the conviction was obtained while application for supersedeas or writ of error is pending in the Supreme Court. This chapter does not apply where one is convicted of murder and the punishment fixed at death, nor was there any repeal, by implication, of section 538, supra, by said chapter 95. No error was committed in following the procedure laid down by section 538. Other errors assigned are without merit.

We have carefully read the record in this case and are convinced that defendant had a fair and impartial trial

and that the verdict of the jury was warranted by the evidence.

The judgment is affirmed, and it is ordered that it be executed during the week commencing Monday, September 25, 1939.

MR. JUSTICE FRANCIS E. BOUCK not participating.